Argued May 25; affirmed July 12, 1949

## CHAMP et ux. *v.* STEWART et ux.

·208 P. 2d 454

*John H. Carson,* of Salem, argued the cause and filed a brief for appellants.

*George A. Rhoten,* of Salem, argued the cause for respondents. On the brief were Rhoten & Rhoten and William H. Trindle, of Salem.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

ROSSMAN, J.

This is an appeal from a judgment rendered by the Circuit Court in favor of the plaintiffs, based upon findings of fact and conclusions of law. The nature of the action was ejectment. The plaintiffs, as well as the defendants, are husband and wife.

The property is thus described in the attacked judgment:

"All of Blocks numbered 1 and 3, and Lots 2 and 10, inclusive, in Block No. 2 in the town of Minto, Marion County, Oregon, according to the recorded plat thereof on file in the office of the County Recorder of Marion County, Oregon. Also

all of the south half of the southeast quarter S 1/2 of SE 1/4) of Section Twenty-five (25) Township Nine (9) South, Range Three (3) East of the Willamette Meridian in Marion County, Oregon. Saving and excepting therefrom a strip of land thirty (30) feet in width on each side of the center line of the Willamette Valley and Coast Railroad Co. (now known as the Corvallis and Eastern Railroad Co.) as described in deed recorded in Vol. 49, pages 347 and 348 of the Deed Records for Marion County, Oregon.''

The respondents (plaintiffs) base their claim of ownership upon a deed of conveyance which Marion County delivered to them. The consideration was $300.00. Marion County obtained title, in the event the proceedings preliminary thereto were regular, by the foreclosure of the lien of taxes which became delinquent in 1931. The foreclosure proceeding was of the omnibus type (see § 110-905, O. C. L. A.) and included all properties upon the 1939 foreclosure list of that county. The appellants (defendants) have no muniments of title. Their title, in the event they have any, rests upon a claim of adverse possession.

The appellants present the following assignments of error:

1. ''The description of the real property as set forth in the assessment roll and the foreclosure list is insufficient to give the court jurisdiction of the property described in the complaint.''
2. ''The Court erred in admitting in evidence the record and files of the 1939 foreclosure proceeding as a muniment of title in plaintiffs.''

We shall now consider the second assignment of error. In its support, the appellants argue:

''The tax foreclosure proceeding being in rem, the process by which the court could acquire juris-

diction over the property described in the complaint must run in the name of the State of Oregon.''

They rely upon § 10-601, O. C. L. A., which provides that ''all process  *  *  *  issued by any court or officer thereof, shall run in the name of the State of Oregon.''

Section 110-904, O. C. L. A., says:

"Notice of each foreclosure proceeding, except as otherwise provided herein, shall be given exclusively by four weekly publications of said foreclosure list in some newspaper of general circulation  *  *  *. The publication of such notice shall be sufficient service on each and every person interested in any of said properties  *  *  *.''

Thus it is seen that a summons is not employed in the foreclosure of the lien of delinquent taxes. A notice is the means whereby jurisdiction is acquired. The foreclosure proceeding, according to § 110-905, is ''in rem against the property itself.'' The county is the proper party plaintiff: § 110-905, O. C. L. A. The tax foreclosure proceeding was entitled ''Marion County, a political subdivision of the State of Oregon, plaintiff, v. Isaac Crader  *  *  *, defendants.''

The published item which constitutes the notice and subjects the property to the court's jurisdiction, as is evident from the section of our laws just quoted, is a document entitled Foreclosure List. Section 110-902, which requires the tax collector, that is, the sheriff, to prepare the foreclosure list, says that the list

"shall contain the names of the several persons appearing in the latest tax roll as the respective owners of tax delinquent properties, a description of each such property as the same appears in said latest tax roll, the year or years for which taxes are delinquent on each property, together with

the principal amount of the delinquent taxes of each year and the amount of accrued and accruing interest thereon * * *."

Obviously, the list must be over the tax collector's authenticating signature. The publication of the list becomes the notice to the delinquent taxpayers. Section 110-903 says that "on the day which is six months after the day of delinquency of taxes of the latest year, the tax collector, with the assistance of the district attorney, shall institute proceedings to foreclose" the properties upon the foreclosure list. Thus the foreclosure is begun by the filing of the complaint and the publication of the foreclosure list. Any property owner who finds his property entered upon the published foreclosure list is notified thereby that the machinery of the law is grinding away toward a decree which will affect his property, and that if he wishes to save it from the impending fate he must now come forth with his defenses, if he has any.

■ *Frederick v. Douglas County*, 176 Or. 54, 155 P. 2d 925, sustained the validity of the procedure of which we have taken notice and, referring to § 110-904, O. C. L. A., being the section which renders publication of the foreclosure list notice to the delinquents, said:

"It is clear that the fundamental requisites of jurisdiction as imposed by constitutional mandate were present in the case at bar."

Accordingly, we see that the notice for which § 110-904 makes provision consists of publication of the foreclosure list. The latter, as we have pointed out, embraces the sheriff's signature, the sheriff being the tax collector. We think that in making these provisions, the legislature did not intend to subject the notice to

the requirements of § 10-601, O. C. L. A. To have styled the foreclosure list "in the name of the State of Oregon" would have been foreign to its nature and, in fact, untruthful. We hold the first assignment of error lacking in merit.

We come now to the remaining assignment of error. By reverting to it, it is seen that it challenges the description of the real property which was set forth in the assessment roll and in the foreclosure list. The assessment roll is not before us but, as is evident from our analysis of the first assignment of error, there is before us the foreclosure list. The respondents, in establishing their title, went back no further than the foreclosure proceedings. They presented to the Circuit Court the following documents: the 1939 foreclosure list of Marion County; the complaint which the county filed in the foreclosure proceedings; the motion for an order of default; the judgment and decree; the deed of the sheriff to Marion County; the resolution by the County Court of Marion County authorizing the sale of the property to the respondents; and the deed of Marion County to the respondents.

The respondents rest their claim to title upon the deed they received from Marion County, and the title of the latter is dependent upon the regularity of the foreclosure decree which was entered in the proceeding entitled "Marion County, a political subdivision of the State of Oregon, plaintiff, v. Isaac Crader, et al., defendants." Section 110-920, O. C. L. A., says:

"Any judgment and decree for the sale of real property to the county, on foreclosure for delinquent taxes, shall be conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. * * *"

The appellants make no claim that taxes assessed against the property involved in this action, and entered as delinquent in the 1939 foreclosure list, were ever paid, and likewise make no claim that the property was not liable to assessment. Their sole contention is that the description of the property as set forth in the assessment roll and in the foreclosure list was insufficient to give the court jurisdiction.

■ Tax foreclosure proceedings are "in rem against the property itself." We have cited the pertinent section of our laws. Therefore, in order to subject any parcel of property to the jurisdiction of the court in a tax foreclosure proceeding, it is essential that the property be correctly described in the published notice that begins the proceedings. Our laws make many provisions for shortcuts in the description of property entered upon the tax rolls. We shall now take note of some of them. Section 110-340, O. C. L. A., prior to an amendment to the section by Oregon Laws, 1941, Chap. 359, which, of course, is immaterial in this action, read:

"If the land assessed be less or other than a subdivision according to the United States survey, unless the same be divided into lots and blocks so that it can be definitely described, it shall be described by giving the boundaries thereof, or by reference to a description thereof by book and page of any public record of the county where the same may be found, or in such other manner as to make the description certain."

Section 110-341, O. C. L. A., prior to its repeal by Oregon Laws, 1941, Chap. 359, (the repeal is immaterial in this action) said:

"It shall be sufficient to describe lands in all proceedings relative to the assessing, collecting, advertising, or selling the same for taxes, by initial letters, abbreviations, figures, fractions, and ex-

ponents to designate the township, range, section, part of a section, distance, course, bearing, and direction, and also the number of lots and blocks or part thereof.''

Section 110-342, O. C. L. A., prior to its repeal by Oregon Laws, 1941, Chap. 359, (the repeal is immaterial in this action) said:

"In all proceedings for the assessment, levy or collection of taxes, or sale of property, or other proceedings for collection of delinquent taxes, said designation as provided in sections 110-340 and 110-341 hereof shall be a sufficient description, and it shall not be necessary to enter in such proceedings a description of such tract by metes and bounds.''

■ Very likely the system of heiroglyphic description authorized by those sections of our laws and continued in effect by Oregon Laws, 1941, Chap. 359, means but little to a property owner unfamiliar with the system, but if our laws required the same description to be entered upon the assessment rolls as is found in deeds of conveyance, the rolls would be excessively cumbersome. The same observation is applicable to foreclosure lists. The bulk of those documents would defeat their own purposes, and requirements of that nature would render our system of assessment and collection unworkable. Of necessity, the law imposes upon the owner of property subject to taxation the duty to familiarize himself with our laws governing the imposition and collection of taxes. When tax officials make entries of the authorized kind, the property owner is charged with the knowledge thereby signified: *Frederick v. Douglas County*, supra.

■ The 1939 foreclosure list of Marion County, being the only one material to the issues before us, after making recitals and a caveat appropriate to a tax fore-

closure list, contained eight columns bearing the following headings: Name of Owner and Description of Property as Shown by the Latest Tax Roll; Sec. or Lot; Twp. South or Block; Range E. or W., W. M.; Tax Roll, Vol., Line, Page; Year of Delinqency; Amount of Taxes; Interest to June 15, 1939; and Total. In each of those columns were entries which, the respondents say, identified the properties which were involved in both the tax foreclosure suit and this action. Since we have no information to the contrary, we must presume that the entries properly identified the properties listed in the 1939 foreclosure list: Section 2-407, subd. 15, O. C. L. A., and *Frederick v. Douglas County,* supra. In view of that presumption, which the appellants did not seek to rebut, the description of the property upon the assessment roll and in the foreclosure list must be deemed regular. The foreclosure decree was, therefore, free from the defect upon which the appellants depend.

There remains for consideration the question as to whether the property mentioned in the foreclosure decree is the same property that constitutes the subject matter of this action. As can be inferred from the column headings in the foreclosure list, the description there employed was not the same as the one recited in the complaint which we quoted in a preceding paragraph of this opinion. We have no information concerning the significance of some of the entries in the 1939 foreclosure list, but, as we have said, we must presume that those entries properly identified the various properties.

We think it is clear from the evidence before us that the property involved in the foreclosure proceeding was the same property as that described in the com-

plaint which instituted this action. For instance, the appellant, Lancet Stewart, testified:

"Q. This property that is described here and with which we are concerned, you went into possession of that a little over twenty-six years ago?

"A. Yes.

"Q. And you have been in possession of it ever since?

"A. Yes.

※　※　※

"Q. Did you know, Mr. Stewart, that this property was up for sale?

"A. No, I didn't know at the time.

※　※　※

"Q. Did this plaintiff, S. W. Champ, come to your place prior to the time he undertook to purchase it and obtain a deed from Marion County and tell you that the property was for sale, and that you should buy it?

"A. No, he never told me it was for sale.

※　※　※

"Q. When did you first learn it was for sale?

"A. Like Champ bought it today, I knew it by daylight the next morning. A man came and told me.

"Q. When did Champ come to see you?

"A. Well, he came the next day. He wanted to find out all about the land, how it laid and all about it. And I think it was the second or third day before he told me he had bought it."

It shortly developed that after the respondents received their deed the appellants, in order to remain in possession, paid rent to the respondents for one month. The appellant, Lancet Stewart, also testified:

"Q. Up to the time Mr. Champ bought the property, did you ever claim title to it, to anyone at all? Did you ever tell anyone you owned the property?

"A. Oh, well, I said,—kind of smiled among

some of the fellows I knew, and I said just as soon as that sold for taxes I would buy it.

"Q. Then you did know that the property was to be sold for taxes?

"A. Well, I didn't know when it was coming up. I was stalling until that time.

\*   \*   \*

"Q. You knew, as a matter of fact, that there was a foreclosure?

"A. And that it would be coming up soon.

"Q. And you expected that you would get your title through that sale eventually?

"A. Yes."

■ From those answers, as well as from other evidence which was given, it is clear that the property involved in the tax foreclosure proceeding was the same as that which is the subject matter of this action.

■ During the oral argument counsel for the appellants called attention to the fact that the record contains no express indication that a ruling was made upon the objections which he presented when the appellants offered in evidence the various documents listed in a preceding paragraph of this opinion. The documents are before us and were received at the time they were offered, but the record, in most instances, contains the notation, "ruling reserved." From Wigmore on Evidence, 3d Ed., § 19, we quote the following:

"The reservation of a ruling on evidence *admitted* may well require that the objector, in order to raise the question on appeal, should later either except formally or move to strike out."

The authorities that are cited by Dean Wigmore in a footnote bear out his statement. The same rule is stated

in 4 C. J. S., Appeal and Error, § 322, p. 657, from which we quote:

> "Where a ruling on a motion or objection is reserved by the court, movant or the party objecting must subsequently obtain a direct decision or ruling in order to preserve the motion or objection for appellate review. If evidence is received subject to objection, * * *, and a subsequent ruling is not sought by motion or otherwise, the reviewing court will not consider the admissibility of such evidence, because there is no definite or final decision as to its admissibility."

It is evident that the documents were actually admitted and considered by the trial court, notwithstanding the form of the ruling. Since no motion was made in the Circuit Court to strike out the exhibits, we have treated the situation as though the objections were expressly overruled.

We find the assignment of error under consideration lacking in merit.

The above disposes of all contentions before us. The judgment of the Circuit Court is affirmed.