Argued May 1, affirmed September 5, 1951

# KNAPP *v.* JOSEPHINE COUNTY ET AL.

235 P. 2d 564

*William M. McAllister,* of Medford, argued the cause for appellant. With him on the brief were Robert B. Duncan and Carl M. Brophy, of Medford.

*E. L. Mikesell,* of Grants Pass, argued the cause for respondent Josephine County. On the brief were Miller and Mikesell, of Grants Pass, and Wm. F. Johnson, of Grants Pass, District Attorney for Josephine County.

*James T. Chinnock,* of Grants Pass, argued the cause and filed a brief for respondents J. J. Villair and Mabel R. Villair.

Before BRAND, Chief Justice, and HAY, ROSSMAN, WARNER and TOOZE, Justices.

ROSSMAN, J.

This is an appeal by Addison P. Knapp, plaintiff-appellant, from a decree of the Circuit Court which

dismissed a suit filed by him to secure a decree removing an alleged cloud from the title to a parcel of land of which he claims ownership. The decree was entered after demurrers filed by the defendants to the second amended complaint, to which we shall hereafter refer as the complaint, had been sustained. The defendants-respondents are Josephine County and two individuals by the name of Villair. Both the county and the Villairs attacked the complaint by demurrers, which sumbitted, among other contentions, that the complaint did not state facts sufficient to constitute a cause of suit. In presenting that contention, the defendants urge that it appears from the complaint that on September 13, 1940, all persons, including the one who later attempted to convey title to the plaintiff, were deprived of title to the property by a decree of the Circuit Court which foreclosed the lien of taxes which had been levied against the property and which had become delinquent. According to the complaint, the defendants Villair have agreed with the county to purchase the timber which stands upon the land.

The complaint (Paragraph III) describes the property which is the subject matter of this suit as follows: "The Northeast Quarter of Section 16, Township 39 South, Range 6 West of the Willamette Meridian." The plaintiff avers that one J. R. Guthrie received a deed January 4, 1909, which conveyed to him title to that property. March 13, 1930, Guthrie died and, according to further averments, his estate was probated and "in said probate proceedings and by the final order in said probate proceedings, Janann Guthrie Baker, * * * a daughter of said J. R. Guthrie, was established as his heir and the owner of the above-described real property." Continuing, the complaint alleges that August 10, 1946, Mrs. Baker and her hus-

band executed and delivered a deed which conveyed title to the plaintiff. In that manner, so the complaint says, the plaintiff acquired title to the property. The pleading does not mention whether the property was occupied or vacant, nor does it disclose whether either Mr. Guthrie or his daughter, Mrs. Baker, resided in Oregon.

We come now to the averments which describe the tax foreclosure suit. The complaint gives a detailed account of that suit and, based upon it, the plaintiff argues that (1) the court never acquired jurisdiction over either the property or the cause; (2) the foreclosure decree is void; and (3) the deed to the county is a nullity. The defendants depend upon the same detailed account of the suit to defeat the plaintiff's claim to ownership of the property. They claim that it appears from the complaint's portrayal of the suit that the court acquired jurisdiction, and that everything which was done in the suit complied substantially with the governing statutes. In short, the validity of the tax foreclosure proceeding is the issue in this case.

The complaint alleges that June 15, 1940, the defendant, Josephine County, filed in the Circuit Court for Josephine County "its application for judgment and tax foreclosure against certain real property listed in the 1940 Delinquent Tax Foreclosure List attached to said application." It states that "the only purported description of the property described in Paragraph III of this complaint contained in said application for judgment * * * and the only designation of the owner of said property was contained in lines 40 to 44, inclusive, of page 40 of said 1940 Delinquent Tax Foreclosure List." A copy of the part of the 1940 Delinquent Tax Foreclosure List which is applicable

to the property in issue is made a part of the pleading. We have already quoted from Paragraph III of the complaint the description of the property as it is there given. The description of the same property in the 1940 Delinquent Tax Foreclosure List was made in the manner which we will now describe. The list was headed by a caption reading: "1940 Delinquent Tax Foreclosure List, Josephine County, Oregon." Under that caption were columns, five of which bore the following headings and contained the following entries:

1. "Name of Owner as Shown by Latest Tax Roll
   Guthrie, J. R."

2. "Description of Property
   N. E. ¼"

3. "Section or Lot
   16"

4. "Twp. or Blk.
   39"

5. "Range W. M.
   6"

Since there is no claim of any irregularity in the entries in the other four columns, we omit mention of them.

We interrupt our review of the complaint to take notice of the criticisms made by the plaintiff of the entries in the five columns which we have mentioned. Mr. Guthrie's name, it will be noticed; was written in the first column which is headed with the caption, "Name of Owner as Shown by Latest Tax Roll". It will be recalled that Guthrie died in 1930 and, therefore, he could not have been the owner of the property in the years 1935 to and including 1939, when the taxes became delinquent, nor in 1940 when the foreclosure suit was filed. The complaint avers that Mr. Guthrie's daughter and heir, Mrs. Baker, was owner of the prop-

erty at the times just mentioned. The plaintiff, however, does not allege that Guthrie was not the "Owner as Shown by Latest Tax Roll". The complaint offers no criticism of the entry contained in the column headed "Description of Property". The numeral 39, it will be remembered, was contained in the column headed "Twp. or Blk.", but the column did not disclose whether the township was north or south of the base line. The entry in the column, "Range W. M.", was 6, but no mention was made at that point as to whether the range was west or east of the Willamette Meridian.

We now return to the complaint. After its references to the 1940 Delinquent Tax Foreclosure List it says: "Notice of said application was published in the Grants Pass Daily Courier on August 9, 16, 23 and 30, 1940." A copy of the published notice is made a part of the complaint. It was headed "Notice of Foreclosure of Tax Lien as Shown by Josephine County Foreclosure List for the Year 1940" and was addressed to all who had "any interest in any property included in the Foreclosure List hereinafter set forth and being the Josephine County Delinquent Foreclosure List for the year 1940." The notice named Josephine County as plaintiff and listed among the defendants was J. R. Guthrie. It required all to take notice that Josephine County had filed in the Circuit Court for that county an application to foreclose the lien of taxes shown on the Josephine County Tax Foreclosure List for the year 1940, and said:

"You are hereby required to take notice * * * that the plaintiff will apply to the court for judgment and decree foreclosing such tax liens not less than thirty days from the date of the first publication of this notice, and any and all persons interested in any of the real property included in

said foreclosure list are hereby required to file an answer and defense, if any there be, to such application for judgment and decree within thirty days from the date of the first publication of this Notice, which date is the 9th day of August, 1940.''

The document, apart from the parts which contain the above statements, was divided into eight columns. The first of the latter bore the heading, ''Name of Owner and Description of Property as Shown by Latest Tax Roll''. The fourth was captioned ''Range W. W. M.'' The other columns bore the same captions as those in the 1940 Delinquent Tax Foreclosure List of which we have taken notice. In the column headed ''Name of Owner and Description of Property as Shown by Latest Tax Roll'' were these entries: ''Guthrie, J. R.; N. E. ¼''. In the one headed ''Section or Lot'' there was entered ''16'' and in the column captioned ''Twp. or Blk.'' there was the number ''39''. In the column entitled ''Range W. W. M.'' was the number ''6''.

Continuing, the complaint alleges that September 13, 1940, a decree was entered in the tax foreclosure suit which ''purported to foreclose the tax lien against all of the real property described in the application for foreclosure and judgment.'' A copy of it is made a part of the complaint. It is entitled ''Judgment, Decree and Order of Sale''. The part of it which described the many parcels of property upon which it foreclosed the lien of delinquent taxes was divided into eight columns, none of which bore a caption. One of the entries read in part as follows: ''Guthrie, J. R.; N. E. ¼; 16; 39; 6.'' Other parts of the decree recited:

''At this time the above-entitled cause coming on for hearing upon the complaint and application for judgment and decree foreclosing tax liens as

shown by the 1940 foreclosure list of Josephine County, Oregon, heretofore filed by the plaintiff herein, * * * Now, Therefore, it is hereby ordered * * * ."

The decree held that the foreclosure list was prepared by the sheriff and tax collector of Josephine County in obedience to the demands of Oregon Laws 1939, chap. 485, and that the list described the "real property in said county subject to foreclosure for delinquent taxes" on June 15, 1940. It directed that the tax-delinquent properties "be sold directly to Josephine County, Oregon, the plaintiff herein, for the respective amounts of taxes, interest and penalties for which such properties severally are liable and as herein adjudged and determined."

The complaint further alleges that September 15, 1941, the sheriff and tax collector of Josephine County delivered a deed to the county "attempting to convey the real property described therein and in said decree to Josephine County." It states that the deed, a copy of which is made a part of the complaint, was recorded December 3, 1941. The pertinent part of the deed is:

"Witnesseth, That Whereas, * * * and after having given due notice to the effect that unless the land hereinafter described be redeemed before this day, a deed would be issued to the county covering any and all of the real properties herein described and described in such Notice of Redemption and that upon the execution of this deed said properties would be forfeited to said Josephine County, and the lands hereafter described not having been redeemed; * * * the Northeast Quarter of Section 16, Township 39 South, Range 6 West of the Willamette Meridian, Josephine County, Oregon."

The complaint, referring to the deed, charges:

"No proof of the publication of any notice of the expiration of the period of redemption required by the provisions of Section 110-914, O.C.L.A., was attached to or made a part of said deed."

The complaint also claims that the records in the foreclosure suit did not contain proof that notice had been published of the impending expiration of the period for redemption. It does not aver, however, that notice was not published.

The foregoing is a review of the averments of the complaint which seek to indict the delinquent tax foreclosure proceeding. They are followed by a paragraph which alleges that the proceedings "were and are void and of no force and effect for the following reasons:" (1) J. R. Guthrie, who was "named in said foreclosure proceeding as the owner, "had died several years prior to the institution of the proceeding and "the real owner and the record owner of said property was not named on the tax roll nor in said foreclosure proceeding." (2) The description employed in (a) the application for judgment and decree; (b) the published notice of the application; and (c) the whole of the tax foreclosure proceeding was defective in that it did not designate whether the township in which the land was located was north or south of the base line, and did not mention whether the indicated range was east or west of the Willamette Meridian. (3) The notice of foreclosure of the tax lien "was a nullity, and the court acquired no jurisdiction in the attempted foreclosure, because the notice did not allow sufficient time or the full time prescribed by law for the defendants to appear in said foreclosure proceeding." (4) The deed to the county "did not have attached thereto or made a part thereof any proof of the publication of any notice of the

expiration of the period of redemption as required by the provisions of Section 110-916, O.C.L.A., and proof of the publication of notice of the redemption period was not filed in the tax foreclosure proceeding.''

Since there is no controversy concerning the other averments of the complaint, we shall omit mention of them.

From the foregoing we see that the plaintiff does not claim that the property in issue was not subject to taxation. Likewise, he does not dispute the amount of the levied tax and does not claim that it had not become delinquent before the tax foreclosure suit was instituted.

The plaintiff's brief submits four propositions; the first of them is:

"A tax foreclosure proceeding against a named person other than the true and record owner and against land which is improperly described throughout said proceedings is invalid as an attempt to deprive a person of property without due process of law and the court in such proceeding obtains no jurisdiction over either the land or the owner.''

■ We will now consider that contention. No constitutional provision requires that a judicial proceeding shall precede the sale of tax-delinquent property: Black on Tax Titles, 2d Ed., § 149, and 51 Am. Jur., Taxation, § 1025, page 895. In this state, it was not until the enactment of 1907 General Laws of Oregon, Chap. 267, that a judicial proceeding preceded the sale of tax-delinquent property. Until the adoption of that measure, sales of such properties were purely ministerial, and yet when the taxing officials had complied with all of the germane statutes, the validity of the sales was recognized: *Multnomah County v. Title Guarantee Co.*, 46 Or. 523, 80 P. 409. The reason, of

course, was that, in the absence of a statutory requirement, an order of court is not essential to the sale of tax-delinquent property, provided that the owner of the property was afforded adequate opportunity to challenge the assessment and the levy at the time of their imposition. The plaintiff makes no claim that the taxes which were imposed upon the property in issue, and which upon becoming delinquent caused the tax foreclosure suit to be filed, were levied in an unconstitutional manner or that the current owner was afforded inadequate opportunity to contest the assessment, the tax or the amount of either.

By reverting to the proposition which we quoted from the plaintiff's brief, it will be seen that the plaintiff does not contend that our statutes which prescribe the procedure governing the foreclosure of the liens of delinquent taxes infringe upon any constitutional provision, but asserts that the procedure which was employed in the tax foreclosure suit did not comply with the statutes and thereby denied to him due process of law. Specifically, he claims that the owner of the property was not named in the foreclosure suit as defendant and that the description of the property was defective.

■ Because of (1) the nature of taxation, (2) the fact that tax obligations are imposed under public statutes with which the property owner is presumably familiar, (3) the regular recurrent assessment of taxes, and (4) the property owner's duty to the taxing unit, the demands of due process yield less for the property owner in tax foreclosure suits than in cases involving private obligations. The rule is well stated in *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W. 2d 86, 160 A.L.R. 990:

"Due process is a very different thing in the assessment and collection of public taxes from the

same right as applied to litigation between parties over private rights, the institution of the latter depending wholly on the will of the complainant. The reasons are apparent. The first is the government's exigent need for the pecuniary support necessary to its existence. The second is the futility of impeding the annual collection of taxes by requiring a predetermination of the titles to many parcels of land (in this case 25,000 or 30,000) and the identity and competency of their owners. The third is that taxes are collected periodically under fixed laws which, in a restricted sense, impart their own notice. The settled doctrine of the authorities is that the taxing power is wholly legislative, and that land may be summarily foreclosed and sold for delinquent taxes even by administrative procedure alone. This does not deny due process if there has been a compliance with the essential provisions of the statute, and the landowners are afforded an opportunity to be heard, though only by an administrative tribunal after the sale.

"Such has been the ruling under the Fourteenth Amendment, with respect to judicial foreclosure proceedings, in several decisions of the United States Supreme Court cited in the margin. * * *"

The same principle has always been employed by the Federal Supreme Court. We quote from *King v. Mullins,* 171 U.S. 404, 43 L. Ed. 214, 18 S. Ct. 925, as follows:

"Much of the argument on behalf of the plaintiff proceeds upon the erroneous theory that all the principles involved in due process of law as applied to proceedings strictly judicial in their nature apply equally to proceedings for the collection of public revenue by taxation. On the contrary, it is well settled that very summary remedies may be used in the collection of taxes that could not be applied in cases of a judicial character. This subject was fully considered in Murray's Lessee v. Hoboken Land and Improvement Co., 18 How. 272, * * *."

The decision, after reviewing the facts in the Murray's Lessee decision, quoted from it as follows:

> "It may be added, that probably there are few governments which do or can permit their claims for public taxes, either on the citizen or the officer employed for their collection or disbursement, to become subjects of judicial controversy, according to the course of the law of the land. Imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding and sometimes by systems of fines and penalties, but always in some way observed and yielded to."

Having made that quotation, the court proceeded as follows:

> " * * * In Bell's Gap Railroad v. Pennsylvania, 134 U.S. 232, 239, it was said that 'the process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.' This must be so, else the existence of government might be put in peril by the delays attendant upon formal judicial proceedings for the collection of taxes."

*Multnomah County v. Luihn,* 180 Or. 528, 178 P. 2d 159, speaks, in part, to similar effect. We see from the foregoing that the demands of due process of law are more easily satisfied in tax foreclosure proceedings than in other kinds of cases.

■ The plaintiff depends upon the following statement contained in *Lewis v. Blackburn,* 42 Or. 114, 69 P. 1024.

> " * * * The requirement of the statute that the assessment should be made in the name of

the owner, if it can be ascertained, is for the protection of the taxpayer, and to prevent a sacrifice of his property. Its strict observance, therefore, is imperative and essential to jurisdiction. If, in such case, the assessment be made in the name of a person who is not the owner, or to persons unknown, it is void, and a subsequent sale of the property for nonpayment of the taxes levied thereunder is invalid, and passes no title to the purchaser: * * * ."

The plaintiff construes that language as a demand that the owner must be made a defendant in tax foreclosure proceedings and believes that our present statutes should receive such construction. When the Lewis decision was written, the sale of tax-delinquent property was conducted by administrative officials without the intervention of any judicial proceedings whatever. As a result thereof, the courts held at that time that it was essential to the validity of tax sales that the tax-levying officials had complied with all statutes which governed the imposition of taxes. A good illustration of the strict compliance with the applicable statutes which was exacted of the officials is *Walton v. Moore,* 58 Or. 237, 113 P. 58, 114 P. 105. The part of the Lewis decision upon which the plaintiff depends was this court's analysis of the efforts made by the tax officials to comply with the statutes which governed their imposition of the tax, which, upon becoming delinquent, had resulted in the contested tax sale. The statement which we quoted from the Lewis decision, and which is quoted in the plaintiff's brief, was made by this court after it had reviewed the relevant statutes. Their essence was summarized by the court as follows:

" * * * under the law as it stood at the time the assessment in question was made, it was

only where land was unoccupied, and the owner unknown, that it could legally be assessed otherwise than in the name of the owner. The assessor was required to ascertain the name of the owner of land about to be assessed by him, and could not list it to 'unknown owner' if the true owner was known, or could be ascertained by 'diligent inquiry'."

After mentioning those requirements and pointing out that the assessment was made to "owners and claimants, known and unknown", the decision said:

" * * * If the name of the owner was known to the assessor, as the assessment itself would seem to indicate, the land should have been assessed to him. If, on the other hand, it was unoccupied, and the owner unknown, it should have been so assessed. But an assessment cannot legally be made in the alternative, either to owners known or unknown. It must be made definitely to one or the other, and, unless so made, it is void."

Then followed the statement upon which the plaintiff relies. It will be noticed that the court spoke of "the requirements of the statute" when it held that the owner's name, if it could be ascertained through the exercise of due diligence, must be entered in the assessment roll. The court did not speak of any constitutional requirement to that effect. Thus, we see that the quotation from the Lewis decision, upon which the plaintiff relies, was concerned with the validity of the assessment roll and not with a document, such as a foreclosure list. Since the Lewis decision was written, our statutes which govern the sale of tax-delinquent property have undergone a fundamental change. See the opinions in *National Security Corp. v. Smith,* 168 Or. 265, 114 P. 2d 118, 123 P. 2d 203. The change in the statutes has been accompanied with an increased

consciousness of the practical nature of taxation and with the enactment of measures, such as § 110-833, O.C.L.A., which impose upon property owners the duty of supplying the tax officials with relevant information. We think that in the present instance the effect of the omission to have given notice to the owner, Mrs. Baker, must be determined by the statutes governing foreclosure which were in effect at the time the foreclosure suit was filed.

Personal notice of the institution of the tax foreclosure suit was not given to Mrs. Baker, the purported owner of the property at the time of the institution of the tax suit. Oregon Laws 1939, Chap. 485, § 4 (§ 110-904, O.C.L.A.), says:

"Notice of each foreclosure proceeding, except as otherwise provided herein, shall be given exclusively by four weekly publications of said foreclosure list in some newspaper of general circulation in the county, * * * . The publication of such notice shall be sufficient service on each and every person interested in any of said properties, and it shall not be necessary to mail a copy of such notice to the owner or to any other person * * * . All persons owning or claiming to own, or having or claiming to have, any interest in any property included in the foreclosure list are required to take notice of such proceeding and of any and all steps thereunder; * * * ."

The quoted words, it will be noticed, include these, "except as otherwise provided". The exception was inapplicable to the tax foreclosure suit and, hence, we need spend no time upon it. Thus, we see that "except as otherwise provided herein" jurisdiction in tax foreclosure suits is obtained exclusively by publication.

Section 110-905, O.C.L.A., says, in part:

"One general proceeding shall be brought on

the part of the county to foreclose the tax liens against each of the properties included in the foreclosure list, and the person whose name appears in the latest tax roll as the owner of any property therein described shall be considered and treated as the owner of said property. Each such proceeding shall be a proceeding in rem against the property itself.''

In *Longyear v. Toolan,* 209 U.S. 414, 52 L. Ed. 859, 28 S. Ct. 506, the court said:

'' * * * The single objection made in behalf of the plaintiff in error is that the statute denies to him, then being a resident of the State, the due process of law required by the Constitution, in that it substitutes notice by publication of the proceedings for sale for personal service. * * * It is no objection that the notice was by publication. In the case of Leigh v. Green, 193 U.S. 79, a case of publication, the authorities were reviewed, and it was said, p. 92: 'Where the State seeks directly, or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the Court, and a notice which permits all interested, who are ''so minded,'' to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the Fourteenth Amendment to the Constitution.' * * * The owner of property whose taxes, duly assessed, have remained unpaid for more than one year must be held to the knowledge that proceedings for sale are liable to be begun as soon as practicable after the first day of June, and that the law contemplates that they will be ended before December 1, when the sales will be made by the county treasurer. The proceedings are inscribed on the public records and otherwise made notorious. If he exercises due vigilance, he cannot fail to learn of their pendency, and

that full opportunity to defend is afforded to him. This satisfies the demands of due process of law, * * * ''

See, to like effect, the annotation in 160 A.L.R. 1026.

■■ Accordingly, the fact that jurisdiction is obtained by publication in tax foreclosure proceedings does not invalidate the decree and the eventual deed. Likewise, the fact that tax foreclosure proceedings charge the owner with knowledge of entries made in the public records, pursuant to statutory requirements, does no violence to constitutional provisions.

This is not an appeal from the decree entered in the tax foreclosure suit, but is a proceeding collateral thereto. Section 110-920, O.C.L.A., says:

"Any judgment and decree for the sale of real property to the county, on foreclosure for delinquent taxes, shall be conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. The judgment and decree shall be prima facie evidence that the taxes have not been paid and that the property was subject to taxation at the time it was assessed; and such judgment and decree shall estop all persons raising objections thereto, or to the title based thereon, which existed at or before the date of such judgment and decree and could have been presented as an objection or defense to the application for such judgment and decree. * * * ''

The statute from which we just quoted has proven itself to be an effective shield against collateral attacks upon tax decrees entered in tax foreclosure proceedings: *Linn County v. Rozelle,* 177 Or. 245, 162 P. 2d 150.

■ Since this is not an appeal from the tax foreclosure decree, but a collateral attack upon it, the plaintiff cannot succeed if the Circuit Court, when it entered

the decree in that suit, had jurisdiction over the property and jurisdiction over tax foreclosure proceedings. It is conceded that the court had jurisdiction over such proceedings. Unless the decree in the tax foreclosure suit was void, as distinguished from voidable, this suit must fail. If the court had jurisdiction, but entered an erroneous decree, that fact can be of no avail to the plaintiff.

The first act in the foreclosure of the lien of delinquent taxes is the preparation by the tax collector of a list of properties subject to foreclosure. Section 110-902, O.C.L.A. It is known as the foreclosure list. According to the section of our laws just cited, the list must "contain the names of the several persons appearing in the latest tax roll as the respective owners of tax delinquent properties." We call attention to the words just quoted and make the observation that they do not require that the foreclosure list shall contain the names of the true owners, that is, the names of the persons who appear in the records of a title searcher as owners; the requirement is that the foreclosure list shall contain "the names of the several persons appearing in the latest tax roll" as owners of the tax-delinquent property.

Section 110-344, O.C.L.A., prior to its amendment by Oregon Laws 1941, Chap. 359, said:

"At the time prescribed by law the assessor in each county shall ascertain by diligent inquiry the names of all persons in his county who by law are assessable by him, and also * * * all taxable real estate therein which is assessable by him, and make out an assessment roll of all such property, * * * ."

Section 110-335, before its amendment by Oregon Laws 1941, Chap. 440, provided that the assessor

should enter in the assessment roll "a full and precise description of the lands and lots owned by each person therein named". Going on, that section of our laws says:

> " * * * but if the owner of any land be unknown, such land may be assessed to 'unknown owner,' or 'unknown owners,' without inserting the name of any owner; but no assessment shall be invalidated by a mistake in the name of the owner of the real property assessed, or by the omission of the name of the owner or the entry of a name other than that of the true owner, if the property be correctly described; and provided further, that where the name of the true owner, or the owner of record, of any parcel of real property shall be given, such assessment shall not be held invalid on account of any error or irregularity in the description; provided, such description would be sufficient in a deed of conveyance from the owner; or on account of any description upon which, in a contract to convey, a court of equity would decree a conveyance to be made."

Section 110-336, prior to its amendment by Oregon Laws 1947, Chap. 76, rendered it the duty of the assessor to enter in the assessment roll in separate columns "according to the best information he can obtain: (1) The names of all taxable persons in his county. (2) A description of each tract or parcel of land to be taxed, specifying under separate heads the township, range and section in which the land lies, * * * ." Section 110-341, before it was repealed by Oregon Laws 1941, Chap. 359, said:

> "It shall be sufficient to describe lands in all proceedings relative to the assessing, collecting * * * by initial letters, abbreviations, figures, fractions, and exponents to designate the township, range, section, part of a section, * * * ."

Section 110-833 reads as follows:

"It shall be the duty of each person, firm or corporation owning real or personal property within the state, or against whom taxes upon real or personal property are chargeable, to keep the tax collector of the county where said real or personal property is situate informed of the true and correct address of said person, firm or corporation, and * * * ."

Section 110-834 says:

"It shall be the duty of the tax collector to note upon the tax roll, or in any such other manner as he may deem most feasible, the true and correct address of each person, firm or corporation owning real or personal property in this state, as furnished under the provisions of section 110-833 hereof, * * * ."

The complaint contains no averment that the plaintiff or his predecessor in title complied with the requirements of § 110-833.

■ The foregoing provisions of our laws govern the compilation of the assessment roll. We come now to those which bear directly upon the foreclosure. We have seen that suits for the foreclosure of delinquent tax liens are in rem against the property. In such proceedings the Application for Judgment and Decree corresponds to the complaint in standard cases, and the published notice serves the same purpose as the summons in other proceedings. Section 110-905, from which we have quoted, after making provision for the institution of tax foreclosure proceedings, specifies the person who shall be made the party defendant. It says:

"The person whose name appears in the latest tax roll as the owner of any property therein de-

scribed shall be considered and treated as the owner of said property."

Even though the person whose name appears upon the tax list is required by the sections of our laws of which we have taken notice to be made the defendant in a tax foreclosure suit, yet it remains true, as announced in *Martin v. White,* 53 Or. 319, 100 P. 290, "A valid assessment is as essential to a tax sale as a judgment is to a sale under execution." Since the assessment establishes the lien, it must be valid; otherwise, the subsequent proceedings will lack validity. But if the assessment is valid, that is, if there has been entered in its columns in the manner required by law such information as the name of the owner and a proper description of his property, and if those entries were carried into the foreclosure list, the demands of our statutes have been met. Accordingly, as we proceed, we shall constantly take notice, not only of the demands of the statutes pertaining to the foreclosure list, but also of those which govern the tax and assessment rolls.

Since § 110-904 declares, "Notice of each foreclosure proceeding * * * shall be given exclusively by four weekly publications of said foreclosure list", it seems clear that the description of the properties given in the foreclosure list is the proper one to employ in the foreclosure suit.

Section 110-906, after specifying the formal contents of the Application for Judgment and Decree, says:

"  *  *  *  No assessment of property or charge for taxes shall be considered invalid on account of any irregularity in an assessment roll, *  *  *  or on account of the property having been listed or charged in an assessment or tax roll without any name, or with a name other than that of the

owner; and no error or informality on the part of any officer in connection with assessment, * * * or collection shall vitiate or in any manner affect the assessment of the property or the taxes thereon. Any such irregularity, informality, omission or other error may, in the discretion of the court, be corrected to conform to law."

Section 110-926 contains this provision:

" * * * No proceedings subsequent to a judgment or decree foreclosing a tax lien or liens shall be invalidated and no tax deed declared void or set aside for irregularities, omissions or defects except where the record owner of the land sold shall have been actually misled by such irregularities, omissions or defects to his injury."

The above is a review of the statutes which state (1) the name of the person which must be entered upon the tax roll as owner of any given item of property and which must be entered as defendant in the Application for Judgment and Decree in proceedings for the foreclosure of tax liens against the property; and (2) the description of tax-delinquent property which must be employed in proceedings instituted for the foreclosure of the lien of delinquent taxes.

The plaintiff argues that if the assessor of Josephine County had made the "diligent inquiry" required by § 110-344 and had resorted to the "best information" available, as demanded by § 110-336, he would have learned that Mrs. Baker was owner of the property in the years 1935 to 1939, both inclusive, when the taxes which eventually became the subject matter of the foreclosure suit were levied, and would thereupon have entered her name as owner in the tax rolls. Had her name been listed in the tax rolls, it would have appeared as the name of a defendant in the foreclosure suit. The plaintiff argues that our statutes contem-

plate that whenever the name of the owner can be ascertained through "diligent inquiry" the person must be made a defendant in suits for the foreclosure of tax liens against his property.

Taxes, as has been many times stated, are a very practical matter. They are the lifeblood of the state, and the property owner's most intimate liaison— although often a waspish one — with the state. In construing tax statutes, it must be borne in mind that the law of taxation places upon property owners the duty to keep themselves informed about the recurrent liability of their property for taxes, and charges them with knowledge that neglect to pay a tax will result in foreclosure proceedings. We saw that, as long ago as 1908, when *Longyear v. Toolan,* supra, was decided by the United States Supreme Court, the duty of the owner to exercise vigilance in keeping himself informed concerning taxes imposed upon his property was expressly declared. This court has spoken in similar vein: *Linn County v. Rozelle,* 177 Or. 245, 162 P. 2d 150; *Guthrie v. Haun,* 159 Or. 50, 76 P. 2d 292; *Rae v. Morgan,* 125 Or. 644, 266 P. 1069, 267 P. 1072; and *Gordon v. Adams,* 125 Or. 662, 268 P. 60. Those being the circumstances, we think that all tax statutes should be construed in as practical a manner as possible.

As we stated when we reviewed the plaintiff's contentions, one section of our laws renders it the duty of an assessor to ascertain "according to the best information he can obtain" the names of "taxable persons" and another says that the assessor "shall ascertain by diligent inquiry the names of all persons in his county who by law are assessable by him". If those phrases are given the interpretation suggested by the plaintiff, the staff of every assessor will have to be

increased substantially, and virtually every error com-mitted by an assessor in title examination will defeat the tax assessed against the property. Those conse-quences would be costly to the county, and yet we are aware of no substantial benefit which would accrue to the county through having the assessment roll list with technical accuracy the name of every owner. We believe that the principal purpose of the sections under con-sideration is to assure the state that all property will be assessed and that all will be made to pay its just share of the cost of government. Undoubtedly the sec-tions also exact of assessors the duty of exercising care to enter in the tax rolls the names of actual owners, but they do not expect him, so we believe, to display the skill and thoroughness employed by competent title searchers. We do not think that it is expected, in the absence of special circumstances, that the assessor will examine regularly court, probate and other public records: *Guthrie v. Haun,* 159 Or. 50, 76 P. 2d 292.

The complaint, as we have seen, in referring to the property of J. R. Guthrie, says:

"In said probate proceedings and by the final order in said probate proceedings Janann Guthrie Baker * * * was established as his heir and the owner of the above described real property."

The order of the county court, under the provisions of § 19-1006, O.C.L.A., was only "prima facie evidence of the facts set forth therein." The complaint does not disclose whether Guthrie during his lifetime lived in this state, and likewise does not reveal the place of residence of his daughter, Mrs. Baker. So far as the complaint indicates, the land may have been vacant and no one in the state may have known of the where-abouts of either Guthrie or his daughter. There is no

averment which charges that the assessor of Josephine County neglected the performance of his official duties. Those being the circumstances, it is our duty to presume, under the provisions of § 2-407, subd. 15, O.C. L.A., that he performed his duties and that in their performance he entered the name of J. R. Guthrie in the tax roll as owner of the property in issue.

As we have noticed, § 110-833, O.C.L.A., charges every owner with the duty of keeping the tax collector "informed of the true and correct address of said person" and § 110-834 renders it the duty of the tax collector "to note upon the tax roll, or in any such other manner as he may deem feasible" the information that is given him. An inference is warranted that if Mrs. Baker had performed the duty exacted by § 110-833, her name would have appeared upon the tax rolls as owner of the property in issue. Since she did not supply the assessor with her name and address, a belief is justified that she wished him to continue to carry upon his rolls the name of her deceased father as owner. If that was her intention, it was, no doubt, as easy for her to identify the property under her father's name as it would have been under her own. According to the complaint, Mrs. Baker became owner in 1931. She was chargeable with the knowledge that taxes were levied upon the property annually and that failure to pay them subjected her property to foreclosure proceedings. The taxes for which the liens were foreclosed were levied in the years 1935, 1936, 1937, 1938 and 1939. The foreclosure suit was not instituted until June of 1940. Therefore, Mrs. Baker had neglected for many years to perform the duty exacted of her by § 110-833. Taxation being a practical matter, the law can properly place upon the property owner the duty of supplying the tax collector with his name

and address. Since Mrs. Baker neglected to perform her duty, the plaintiff, as her alleged successor in title, is not in a position to take advantage of the failure of the foreclosure list to have contained her name.

We come now to the contention that (1) the failure of the foreclosure list to mention directly whether the township in which the property was located lay north or south of the base line and whether the range which governed its location was east or west of the Willamette Meridian; and (2) the failure of the published notice to indicate expressly whether the township was north or south of the base line rendered the description fatally defective. As we have seen, the description of the property entered upon the foreclosure list must be employed in the foreclosure suit. Section 110-335, as we have noticed, requires the assessor to enter upon the assessment roll "a full and precise description of the lands and lots owned by each person" entered in the roll. The purposes served by such a requirement are three in number: (1) They enable an owner to determine the tax which has been levied upon his property; (2) they enable the public to identify the properties which have become tax-delinquent; and (3) they facilitate the preparation of a deed in the event the lien of delinquent taxes has been foreclosed against the property. Black on Tax Titles, 2d Ed., § 112. We infer that any description which serves adequately those purposes should be deemed "full and precise".

Section 110-315, O.C.L.A., before its repeal by Oregon Laws 1941, Chap. 359, said: "All lands shall be taxed in the county in which the same shall lie." Accordingly, since the property was taxed in Josephine County, an inference is warranted that it was located there. Further, as we have seen, the foreclosure list

and the published notice described the property as situated in Josephine County. Section 85-125, O.C.L.A., gives the perimeter of Josephine County. Section 2-501 says: "There are certain facts of such general notoriety that they are assumed to be already known to the court," and § 2-502 adds: "The following facts are assumed to be thus known: * * * (2) Whatever is established by law; (3) Public and private official acts of the legislative * * * departments of this state, * * * ." The trial judge, in a memorandum opinion, declared:

> "The court can take judicial notice of the geographic boundaries of Josephine County and of the fact that all townships in that county are south of the base line and west of the Willamette Meridian."

We concur in that statement. Josephine County is entirely west of Willamette Meridian and south of the base line. In fact, there is only one Township 39 in the entire State of Oregon and it is Township 39 South.

*Martin v. White,* supra, was concerned with sections of our laws which then required, and likewise today require, the assessment roll to contain "a full and precise description" of the property. The decision said:

> "Again, the description of the property was insufficient to identify it. It fails to give the township and range in which the land is situated. This might have been rendered definite if disclosed by the assessment to be situated in Columbia County; there being but one township 4, range 4, in that county, but that is not stated. There are in Oregon four townships numbered 4 in range 4, and the description is insufficient to identify the property involved here, and this defect applies equally to the assessment for the years 1892 and 1893."

That decision was written before the enactment of § 110-315, which says: "All lands shall be taxed in the county in which the same shall lie." And we have seen that the name of the county which was missing in the assessment roll assailed in *Martin v. White,* supra, was given in the foreclosure suit now under scrutiny.

██ We believe that anyone familiar with the shorthand method in which properties are entered upon assessment rolls and foreclosure lists would have inferred that, since the property described lay in Josephine County, the description should be read as follows: "The Northeast Quarter of Section 16, Range 39 South, Range 6 West of the Willamette Meridian." Any part of a description which is readily supplied by the identity of the county must be deemed a part of the description in determining whether or not the latter is "full and precise". We do not believe that the description under review failed to meet the statutory requirement.

█ Section 110-335, it will be recalled, says:

" * * * No assessment shall be invalidated * * * by the omission of the name of the owner or the entry of a name other than that of the true owner, if the property be correctly described; * * * "

Since we have held that the property was correctly described, that circumstance is an additional reason for holding that the omission of Mrs. Baker's name from the assessment roll did not affect the validity of the assessment.

The foregoing disposes of the first proposition submitted by the plaintiff. It is quoted in a preceding paragraph. We hold that it is without merit.

■ The second proposition placed before us by the plaintiff-appellant says:

"The alleged deed from the Sheriff of Josephine County to Josephine County (Exhibit D of the second amended complaint) to which no proof of the publication of notice of the expiration of the period of redemption was attached was a nullity and no title passed thereby."

Section 110-916 says:

"Not more than twenty days nor less than five days prior to the expiration of the period of redemption of any real property ordered sold to the county under a judgment and decree in accordance with this act, the tax collector shall publish a general notice relative to the expiration of such period of redemption. Such notice shall contain * * * . Proof of such publication shall be attached to and made a part of the deed issued to the county."

We have quoted in a preceding paragraph the recitals of the deed which were inserted in it in an effort to comply with the requirement just quoted. We think that they sufficed.

We find no merit in the second proposition.

■ The third proposition submitted by the plaintiff-appellant reads:

"A published foreclosure list which is not in accordance with the statute is a nullity and the court thereby acquires no jurisdiction to proceed with the attempted foreclosure."

Section 110-907 says:

"Any person interested in any real property included in the foreclosure list may file an answer and defense to said application for judgment and decree within 30 days after the date of the first publication thereof, exclusive of the date of said first publication."

In a preceding paragraph we quoted the pertinent part

of the published notice. Plaintiff - appellant's brief says:

"The plaintiff has noted the court's opinion in the case of Clark v. Douglas County in 183 Or. 417, dealing with similar phraseology in the foreclosure list as published in the proceeding under attack in that case."

The plaintiff does not question the soundness of the ruling in the Clark decision (183 Or. 417, 193 P. 2d 538). We think that decision requires a holding that the third proposition is without merit.

The fourth proposition follows:

"A foreclosure proceeding fraught with irregularities and errors throughout is a nullity and insufficient to deprive the owner thereof of his title."

The argument submitted in support of that proposition dwells upon "the effect of cumulative errors," but consists largely of restatement of arguments which the plaintiff has already made. We have carefully considered this proposition and in so doing analyzed again the many contentions submitted by plaintiff's resourceful counsel. However, we have found no merit in the proposition and do not believe that we should portray again the principles of law set forth in preceding paragraphs of this opinion.

The above disposes of all contentions submitted by the plaintiff. We think that the demurrers were properly sustained to the complaint and that the defendants were entitled to the decree which the court entered in their favor. We have not mentioned herein all of the numerous authorities cited in the brief prepared by plaintiff's counsel, but all of them received careful attention.

The decree of the Circuit Court is affirmed. Costs and disbursements will be allowed to neither party.