IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KAHLE INVESTMENTS LLC,              )
                                    )
            Plaintiff,              )       TC-MD 120771C
                                    )
      v.                            )
                                    )
WASHINGTON COUNTY ASSESSOR,         )
                                    )
            Defendant.              )       **DECISION**

Plaintiff appeals certain interest charges imposed by Defendant on five separate property

tax accounts, said assessments covering tax years 2009-10, 2010-11, and 2011-12, to wit:

Accounts R2078099, R2078100, R2078101, R2078102, and R2078106.  (Ptf's Compl at 6-11.)

Trial in the manner was held by telephone April 24, 2013.  Appearing for Plaintiff was its

authorized representative Tanis Rovner (Rovner), a member of the Plaintiff entity.[1]  Defendant

was officially represented by Diane Belt, Tax Manager, Washington County Assessment and

Taxation; however no one appeared for Defendant at trial.  The trial was held without

Defendant,[2] the court hearing sworn testimony from Plaintiff's representative Rovner, who by

law bears the burden of proof, as explained further on in this Decision.  Admitted at trial were

Plaintiff's Exhibits 1 through 4.

## I.  STATEMENT OF FACTS

Rovner testified that the property that generated the three delinquent tax assessments and

disputed interest charges, collectively exceeding $7000, is a five-building apartment complex

with 15 units in all, carried in the Assessor's records as 11 tax lots, each with a separate account

---

[1] Rovner describes herself as a "partner/owner" in her Authorization To Represent form.  (Ptf's Compl at 2.)  At trial, Rovner testified that she was Douglas Kahle's granddaughter and became a one-quarter owner of the property following Douglas Kahle's death.

[2] *Cf. Chen v. Multnomah County Assessor*, TC-MD No 120471D (Feb 20, 2013).

number.[3]  (Ptf's Ex 1; Test of Rovner.)  The property is known as Kahle Townhomes.  (*Id*.)

Rovner testified that Plaintiff's prior majority owner, Douglas Kahle (Kahle), who bought the

property in 2003, died in 2008.  Rovner testified that during Kahle's life and ownership of Kahle

Townhomes, the 11 annual property tax statements for the complex were mailed by Defendant to

Kahle's home, located at 1434 Benfield Drive, Portland, Oregon, 97229.  (*Cf*. Ptf's Ex 3 at 1-4.)

Following Kahle's death, and the sale of his personal residence on Benfield Drive,

Wendy Kahle, Rovner's Aunt, sent Defendant a Change of Address Request form dated

November 6, 2008, that was received and filed by Defendant on November 12, 2008.  (Ptf's Ex 2

at 1.)  The address on that request was 4550 SW Greenhills Way, Portland, Oregon, 97221.

(Ptf's Ex 2 at 1.)  The pre-printed change of address request form identified the property it

concerned as follows:

> "Account Number(s)        Map and Tax Lot Number(s)
> "R2078092, R2078093       1S117 BB-11500, 11600
> "*R2078098-R2078103       1S117 BB-12100-12600*
> "*R2078105-R2078107       1S117 BB-12800-13000*
>
> "Registered Owner: Kahle Investments LLC."

(Ptf's Ex 2 at 1) (emphasis added).

Defendant updated its records for six accounts: R2078092, R2078093, R2078098,

R2078103, R2078105, and R2078107.  (Def's Ans at 1.)  Rovner testified that Defendant did not

change the addresses for the five accounts at issue in this appeal, although the change of address

request form was, according to Rovner, intended to include those accounts.  Rovner testified that

the tax statements for those five accounts continued to be sent to the home on Benfield Drive and

that Plaintiff did not receive those five tax bills or pay the tax in 2009, 2010, or 2011.  Rovner

---

[3] The 11 account numbers are R2078092, R2078093, R2078098, R2078099, R2078100, R2078101, R2078102, R2078103, R2078105, R2078106, and R2078107.  (Ptf's Ex 1.)

testified that the owners of her grandfather's "old home" on Benfield Drive received those tax statements but that she did not know what they did with them. Rovner further testified that they did bring the delinquent tax notices for the five unpaid accounts to someone involved with the property, although she did not clarify to whom they were brought. Rovner indicates in a letter to the court dated October 4, 2012, and submitted into evidence as Exhibit 1, that "[r]ecently, the owner of the house at the old address" delivered the notices to "us." (Ptf's Ex 1 at 1.) They were therefore presumably received sometime in September 2012. Rovner's letter further indicates that "[w]e promptly paid the entire bill, including the disputed interest charges[.]" (*Id.*)

It is the italicized account numbers and corresponding map and tax lot numbers in the change of address form that have created the parties' disagreement. Plaintiff's position is that the address change form clearly indicates a range of accounts on the second and third lines because the two numbers are separated by a "dash" and the two accounts on the first line are separated by a comma. (Ptf's Ex 2 at 1.) Defendant argues in its Answer that it "received a notification to change addresses on 6 accounts [and] [t]he accounts that were listed on the address change card were up-dated." (Def's Ans at 1.) In Section 4 of its Answer Defendant requests that the court deny Plaintiff's appeal because "[t]he tax payer admits that they owned 11 accounts. It was not until [three] years had passed that the tax payer inquired as to why they were not receiving tax bills on all of the properties they owned." (*Id*. at 1.)

## II. ANALYSIS

Oregon law requires the county tax collector to deliver or mail "a written statement of property taxes" each year "on or before October 25." ORS 311.250(1).[4] The annual property tax

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2007 unless noted otherwise. The court refers to the 2007 edition because Plaintiff's change of address form was submitted in 2008 and the law in effect at that time was to 2007 edition.

statements are to be sent "to each person * * * shown on the tax roll as an owner of real or personal property, or to an agent or representative authorized in writing pursuant to ORS 308.215." (*Id.*)

There are two statutory provisions requiring taxpayers to notify the county of an address change. ORS 308.212 (1) requires owners of real property who have a change of address to "notify the assessor of any change of address[,]" and to do so "within 30 days of the change[.]" That statute further provides that "notice * * * under subsection (1) of this section does not meet the requirements of this section unless the notice is in writing and * * * [for persons other than individuals] the notice contains the name and address of persons upon whom process may be served." ORS 308.212(2). There is no language in that statute speaking to the specificity of such notice beyond reference to "the property." That is, ORS 308.212 nowhere specifically requires a property owner to set forth the various account numbers pertaining to the property, nor is there any mention thereof.

The other statute is ORS 311.555. It requires property owners to furnish notification of change of address to the county tax collector. The statute provides in relevant part:

> "Each person, firm or corporation owning real or personal property within the state, or against whom taxes upon real or personal property are chargeable, shall keep the tax collector of the county where such real or personal property is situate informed of the true and correct address of the person, firm or corporation. * * *."

ORS 311.555.

Plaintiff appears to have complied with those statutory requirements. Unfortunately, Defendant only updated six of the 11 accounts.

As is common in these types of cases, each party blames the other for Plaintiff's nonpayment of the taxes on the five accounts at issue. Plaintiff argues that Defendant "failed to change five of the account addresses, resulting in those property tax bills being sent to the old

billing address." (Ptf's Ex 1.) Defendant argues in its Answer that Plaintiff admits it owns 11 accounts, and waited three years to inquire why it had not received the property tax bills for all of those accounts.

The court concludes that although Defendant erred in not changing the address for all 11 accounts, the facts and law nonetheless favor Defendant's argument. While the court believes the address change request form Plaintiff submitted to Defendant clearly was intended to identify all 11 of accounts, when only six of the 11 tax statements arrived in 2009, Plaintiff should have inquired as to the whereabouts of the five missing tax statements. Plaintiff failed to do so, waiting some three years until the person who bought Kahle's home on Benfield Drive brought Defendant's delinquency tax notices to one of Plaintiff's member owners. At least, that was the testimony of Rovner, whom the court found to be quite credible.

ORS 311.250(2) (2011) precludes Plaintiff from succeeding in its request, which is for a waiver of the interest imposed, because the statute provides: "[t]he failure of a taxpayer to receive the [tax] statement described in this section shall not invalidate any assessment, levy, tax, or proceeding to collect tax."

This court has previously ruled that it is the taxpayer's responsibility to audit the assessor's records in property tax matters. *Running v. Dept. of Rev.* (*Running*), 10 OTR 42 (1985). The court in *Running* stated:

> "This case invites re-examination of the relationship between the government and the taxpayer in the process of assessing and collecting property taxes. Like all tax systems, both parties bear some responsibility in the process. Most citizens are painfully aware that in the income tax system it is the taxpayer who has the burden of keeping records and initially assessing the tax. On the other hand, the ad valorem or property tax system requires the assessor to keep the records and to initially assess the tax. Under both tax systems, the law imposes an obligation on the other party to verify, question, test and object to the assessing party's records or work if there is any doubt or question as to their correctness. *Knapp v. Josephine County et al.*, 192 Or 327, 235 P2d 564 (1951).

> The tax authorities certainly do not hesitate to audit income tax returns and question the taxpayer's records and assessments. The property taxpayer should be just as alert in his audit of the assessor's work."

*Id.* at 43.

Thus, while ORS 311.560 requires the tax collector to correctly note on the tax roll the true and correct address of each property owner, ORS 311.250(2) (2011) precludes invalidation of any assessment, levy, or tax in cases where, as here, the taxpayer fails to receive the tax statement. On balance, Plaintiff in this situation bears the ultimate responsibility to see that the taxes are paid, and Plaintiff failed to do so with regard to the five accounts at issue. This court's earlier decision in *Running* supports that conclusion.

Moreover, the Oregon Supreme Court has stated that "every citizen is presumed to have known that his land was taxable, that in due course it would be assessed, a tax levy extended against it * * * [and] that it was his duty to timely pay his taxes[.]" *Hood River County v. Dabney*, 246 Or 14, 28, 423 P.2d 954 (1967) (internal quotation marks omitted).

## III. CONCLUSION

The court concludes that Plaintiff's request for a waiver of the interest Defendant imposed on Accounts R2078099, R2078100, R2078101, R2078102, and R2078106, for the three tax years at issue, 2009-10 through 2011-12, inclusive, must be denied because, while Plaintiff did not receive property tax statements for those accounts, it was or should have been aware that the statements had not arrived and it had a responsibility to inquire as to why those bills were not

/ / /

/ / /

/ / /

/ / /

/ / /

DECISION  TC-MD 120771C 6

received. After all, Plaintiff's did receive the other six property tax statements (bills) for the apartment complex in 2009, 2010, and 2011, and paid the taxes shown therein. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of May 2013.

_____
DAN ROBINSON
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Dan Robinson on May 1, 2013. The Court filed and entered this Decision on May 1, 2013.***