Argued September 9, affirmed October 23, 1963

# EVERGREEN TIMBER COMPANY, INC. *v.*
# CLACKAMAS COUNTY

385 P. 2d 1009

*John O. Sheldahl,* Oregon City, argued the cause for appellant. With him on the briefs was William E. Schumaker, District Attorney, Oregon City.

*James O. Goodwin* and *Harry A. Harris,* Oregon City, argued the cause for respondent. On the brief were Jack, Goodwin & Anicker, Oregon City.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is a suit in which plaintiff seeks to quiet its title derived from Margaret Henderson and her husband against the defendant county. Defendant appeals from a decree quieting plaintiff's title.

The defendant county commenced tax foreclosure proceedings on December 14, 1939 to satisfy unpaid taxes on the property. The foreclosure list as published in the Molalla Pioneer contained the following erroneous description of the Henderson property:

"N½ NE¼ E½ NW¾, Sec. 23, Tp. 2 S., R. 7 E., W. M."

The land intended to be described was the North ½ of the Northeast ¼, and the East ½ of the Northwest ¼, Sec. 23, Tp. 2 S., R. 7 E., W. M.

Defendant county claims title through a sheriff's deed executed to the county following the decree of foreclosure entered on June 3, 1940. The sheriff's deed correctly described the land. The defendant did not take actual possession of the land. Plaintiff entered

upon the land sometime in 1961; placed a cabin on it, posted "No Trespassing" signs, built fire trails and was in possession at the time of trial.

The defendant first contends that being a subdivision of the state it is entitled to assert the defense of sovereign immunity.

We recently held in *Kern County Land Company v. Lake County*, 232 Or 405, 375 P2d 817 (1962) (a quiet title action), that a county is not subject to suit in the absence of a general statute authorizing suit in the circumstances in question. The legislature has seen fit, however, to permit suits against a county where, as here, a taxpayer attacks the validity of a sale of property on foreclosure for delinquent taxes. This authorization is implicit in the enactment of ORS 312.230 (1), which reads as follows:[1]

> "Every action, suit or proceeding, commenced for the purpose of determining the validity of a sale of real property on foreclosure for delinquent taxes, or to quiet title against such sale, or to remove the cloud thereof, or to recover possession of the property, shall be commenced within two years from the date of the judgment and decree of foreclosure and sale to the county, or within six months from June 1, 1961, whichever is the later."

The defendant argues, however, that even though a suit may be brought against the county under the

---

[1] Thus in Champ v. Stewart, 181 Or 300, 181 P2d 780 (1947) this court held that a virtually identical statute applied only to persons claiming ownership against the county or against persons holding title from the county. The statute so limited would be meaningless if action against the county were not permitted—it would be to say that there is a time limitation on an action that cannot be brought.

See also ORS 312.218 (2) set out in the text below, which authorizes an action of ejectment against the county by a taxpayer whose land is foreclosed for taxes.

circumstances of this case, the suit is barred by the operation of the general statute of limitations prescribed in ORS 12.050[2], as it is modified by ORS 312.218. ORS 312.218 reads as follows:

"(1) In relation to or as against the claims of all persons owning or claiming to own, or having or claiming to have, any interest in real property heretofore or hereafter subject to foreclosure for delinquent taxes, excepting only such persons who were or hereafter shall be in the actual and physical possession of any such real property at the time of the execution of a deed thereto to a county pursuant to the provisions of ORS 312.200 that was not and is not void upon its face, the following shall be presumed conclusively:

"(a) That from and after the date of the execution of any such deed to a county, such county shall be deemed to have constructive possession of the real property therein described to the same extent and legal effect as if the county were in the actual, physical and exclusive possession of such property, and for all purposes such constructive possession shall be deemed the equivalent of actual and physical possession of such property that is hostile, adverse, actual, visible, notorious and exclusive.

"(b) That from and after the date of the execution of any such deed to a county, such county had, and hereafter shall be deemed to have had constructive possession of the real property therein described to the same extent and legal effect as if the county were in the actual, physical and exclusive possession of such property, and for all purposes such constructive possession shall be deemed

---

[2] ORS 12.050 provides:

"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor was seised or possessed of the premises in question within 10 years before the commencement of the action."

the equivalent of actual and physical possession of such property that is hostile, adverse, actual, visible, notorious and exclusive.

"(c) That the recording of a deed to a county pursuant to ORS 312.200 gave and hereafter shall be deemed to give notice to the world of such county's constructive possession as provided and defined in ORS 312.214 to 312.220.

"(2) In addition to all other remedies made available to him by law, the remedy of ejectment is hereby made available to any person claiming to be the owner of any property as against the county which is in the constructive possession of the county as provided and defined in ORS 312.214 to 312.220."

ORS 312.218 purports to transmute the non-possessory interest of a county in tax foreclosed lands into a possessory interest, thus making the county an adverse possessor under ORS 12.050.

Certainly the legislature cannot make actual possession exist when it in fact does not exist. The statute is, therefore, nothing more than a legislative declaration that the county may cut off the interest of a taxpayer in tax foreclosed land simply by the expiration of the period prescribed in the statute. In other words, ORS 312.218 is merely a statute of limitations which purports to bar those who claim an interest in tax foreclosed lands.

■ Within certain limits the legislature has the power to fix the time within which actions can be brought, but it cannot, without more, command the owner of property to bring an action to defend his title or lose it. Thus a statute requiring a taxpayer whose land has been foreclosed for non-payment of taxes to bring an action to determine the validity of the tax sale within a certain period after the sale does not operate to divest the taxpayer's title if the foreclosure decree is

void.[9] On the other hand, if the foreclosure decree is simply irregular, a statute limiting the time within which the tax foreclosure proceeding can be attacked is effective to quiet a title derived through the tax sale.[4]

We must decide, therefore, whether the foreclosure decree relied upon by the defendant county was void and, therefore, subject to collateral attack.

The foreclosure proceedings, instituted in 1939, were governed by OC § 69-816. That statute declares that a proceeding to foreclose for delinquent taxes is "a proceeding in rem against the property itself," in which "summons may be served or notice given exclusively by publication in one general notice describing the property as the same is described on the tax rolls."

■ Although the statute does not expressly require the name of the taxpayer to be included in the published notice, the statute is so construed.[5] The notice is fatally defective, therefore, if it fails to include both the name of the taxpayer and a description of the land sought to be foreclosed.[6] A court entering the decree of foreclosure following such defective notice does not have jurisdiction and the decree is void and subject to

[3] Elliott v. Clement, 175 Or 44, 149 P2d 985, 151 P2d 739 (1944). See also, Hughes v. Aetna Casualty & Surety Co., 76 Or Adv Sh 847, 383 P2d 55 (1963).

[4] Lane County v. Bristow, 179 Or 653, 173 P2d 954 (1946); Frederick v. Douglas County, 176 Or 54, 155 P2d 925 (1945); National Surety Corp. v. Smith, 168 Or 265, 114 P2d 118, 123 P2d 203 (1942).

[5] Murphy v. Clackamas County and Jones Lumber Co., 200 Or 423, 264 P2d 1040, 266 P2d 1065 (1954) (different statute). Earlier cases indicating taxpayer's name must be included, Lane County v. Bristow, supra, Guthrie v. Haun, 159 Or 50, 76 P2d 292 (1938).

[6] Murphy v. Clackamas County and Jones Lumber Co., supra.

collateral attack.[7] An adequate description of the property is necessary to vest jurisdiction in the court for still another reason. As we have already noted, tax foreclosure proceedings are by statutory mandate proceedings in rem. In such a proceeding the court does not obtain jurisdiction if the property which is the purported res is not adequately described.[8]

In the case at bar the land description contained in the published notice was defective. The question is whether it was so defective as to render it inadequate for the purpose of satisfying the notice required by OC § 69–816.

The tax foreclosure statutes do not establish any standard by which to test the adequacy of a description in the published notice. The assessment statutes do. OC § 69–231 provides that an "assessment shall not be held invalid on account of any error or irregularity in the description; provided such description would be sufficient in a deed of conveyance from the owner; or on account of any description upon which, in a contract to convey, a court of equity would decree a conveyance to be made."

■ Although the need for clarity in the notification may be greater where property is assessed than where it is subjected to foreclosure proceedings,[9] we believe

[7] Sellards et ux v. Malheur County, 202 Or 188, 272 P2d 975 (1954); Elliott v. Clement, supra.

"[F]ailure to comply with the statutory provisions that govern notice renders the foreclosure decree void." Murphy v. Clackamas County and Jones Lumber Co., 200 Or 423, 446, 264 P2d 1040, 266 P2d 1065 (1954).

[8] Champ et ux v. Stewart et ux, 186 Or 656, 208 P2d 454 (1949).

[9] In foreclosure proceedings the owner frequently knows that his taxes are delinquent and that the consequences of delinquency is foreclosure. Knapp v. Josephine County, et al, 192 Or 327, 235 P2d 564 (1951). See also, Champ et ux v. Stewart et ux, 186 Or 656, 208 P2d 454 (1949); Linn County v. Rozelle, 177 Or 245, 162 P2d 150 (1945).

that the description should at least meet the standard set up in OC § 69–231.[⑩]

Does the description in the case at bar meet the standard? We think not. If we assume that the description could be read as "The North ½ of the Northeast ¼ *and* the E½ of the NW¾, Sec. 23, Tp. 2 S., R. 7 E., W. M.," that part of the description after the word "and" would not identify a specific parcel of land because the call for the NW¾ is meaningless.[⑪] Such a description would not be effective to convey title by deed.[⑫] Even if we were to assume that the owner would translate the call for the NW¾ as a call for the NW¼, the description would still be ambiguous unless it could be regarded as containing the word "and" after the first two calls. Without the word "and" the corrected description could be used to identify a parcel of land although not through the familiar method of applying calls in the system of rectangular surveys.[⑬]

---

[⑩] See Frederick v. Douglas County, 176 Or 54, 155 P2d 925 (1945) indicating that a description sufficient in a deed of conveyance from the owner will be a sufficient description for the foreclosure notice.

[⑪] In Sanders v. Alford Bros., 92 Fla 710, 111 So 278 (1926) the land was described as the "northeast ½ of the Northeast half" of a section. The court said: "There is no such description of a given section of land known to our system of describing lands." The case is cited in Fitch, Abstracts and Titles to Real Property § 178, p. 295.

[⑫] Although there are no Oregon cases closely paralleling the instant case, the description with which we are concerned is no more specific than that dealt with in Sellards et ux v. Malheur County, supra.

[⑬] Thus the description could be read to mean the North ½ of the Northeast ¼ of the East ½ of the Northwest ¼ (correcting the last call). However, this would not be the familiar method of describing land in the system of rectangular survey because ordinarily the description would not call for a one-fourth part of a half of a quarter section.

Descriptions in a series are not uncommon. See for example, Patton on Titles § 145, p. 383.

We observe, then that, the description does not serve to identify the taxpayer's property without a material reconstruction of the calls. Although a description may contain ellipses[⑭] and in other respects may be imperfect,[⑮] there is a limit to the court's power to renovate a defective description.[⑯] Even if we were to test the description solely on the basis of whether it would serve to notify an owner that his land was included in the foreclosure list, we think that the description is inadequate. Notice by publication is, at best, a poor method of warning those whose interests may be adversely affected by litigation.[⑰] When it is used the warning should not be muffled by ambiguity.

■ We hold that the description was fatally defective. The requirement of an adequate description in the published notice not having been met, the court was without jurisdiction to enter the decree of foreclosure.

The decree of the lower court is affirmed.

---

[⑭] Arbogast et al v. Pilot Rock Lbr. Co., 215 Or 579, 336 P2d 329, 72 ALR2d 712 (1959).

[⑮] See Note, Deeds-Description-Sufficiency, 25 Or L Rev 192 (1946).

[⑯] Sellards et ux v. Malheur County, supra; Hertel v. Woodward, 183 Or 99, 191 P2d 400 (1948); Frizeen v. Swanton, 148 Or 250, 34 P2d 939 (1934); Bingham v. Honeyman, 32 Or 129, 51 P 735, 52 P 755 (1898).

[⑰] In Walker v. Hutchison City, 352 US 112, 116, 77 S Ct 200, 1 L Ed2d 178 (1956), the court said:
> "* * * It is common knowledge that mere newspaper publication rarely informs a landowner of proceedings against his property."

In Mullane v. Central Hanover Trust Co., 339 US 306, 315, 70 S Ct 652, 94 L Ed 865 (1950), the court said:
> "* * * Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper * * *."