Argued November 2, 1966, affirmed February 15, 1967

# HOOD RIVER COUNTY, *Respondent, v.*
## DABNEY ET AL, *Appellants.*

423 P. 2d 954

*Kenneth M. Abraham,* Hood River, argued the cause for appellants. With him on the brief were Parker & Abraham, Hood River.

*Carl R. Neil,* Portland, argued the cause for respondent. With him on the brief were John F. Cushman, District Attorney, Hood River; Gunther F. Krause and Krause, Lindsay & Nahstoll, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is a suit to quiet title to a tract of land located in Hood River county. Defendants appeal from a decree in favor of plaintiff.

In September, 1928, proceedings were commenced by Hood River county to foreclose delinquent tax liens against certain parcels of real property, including an 80-acre tract owned by W. E. Dabney, defendants' predecessor in interest. The foreclosure proceedings

correctly described the property in question and named W. E. Dabney as the owner. A summons was published directing W. E. Dabney to appear within six weeks from the date of the first publication of the summons. The statutes then in effect, however, required notice of at least 60 days from the date of first publication. W. E. Dabney did not appear in the tax foreclosure proceeding and a decree of foreclosure was entered against the property on November 28, 1928, which was 76 days after the date of the first publication of the summons.

At the present time the entire 80-acre tract consists of unenclosed mountainous timberland, the only means of vehicular access to which is a dirt fire-patrol road. In the thirty-five years following the foreclosure decree, plaintiff contends that it has acted as the owner of the property and has held it adversely for the requisite prescriptive period. The possessory activities relied upon include the execution of leases, the granting of rights-of-way to adjacent landowners, inspection for Christmas tree sales, and the payment of fire-patrol assessments on the property since at least 1941.

The present dispute arose in 1963 when Ila Dabney, the widow of W. E. Dabney, first learned of the alleged defects in the 1928 foreclosure proceeding. In a series of letters between Mrs. Dabney and officials of Hood River county, Mrs. Dabney was informed that even if the 1928 foreclosure were defective, the county claimed title to the property by adverse possession. The county, however, offered Mrs. Dabney $150 for a quitclaim deed to remove any cloud on its title as a result of the alleged defects in the 1928 proceeding. Mrs. Dabney promptly executed the deed and deposited it in the mail on January 29, 1964. On the day follow-

ing the mailing of the deed (and before it arrived at its destination), Mrs. Dabney entered into an arrangement with defendant Evergreen Timber Company whereby the latter agreed to pay $500 for her interest in the 80-acre tract, plus an additional $2,000 if title could be established against Hood River county.

Mrs. Dabney thereupon demanded that the county either return the deed when it arrived or make a higher offer. The county refused to do either, claiming that the deed had been effectively delivered when mailed. A check was sent to Mrs. Dabney for $150, which she returned.

Hood River county then instituted the present suit to quiet title to the property. Its complaint alleged the acquisition of title on three grounds: (1) The 1928 tax foreclosure and sheriff's deed; (2) adverse possession for a sufficient period since 1928, and (3) the quitclaim deed from defendant Dabney. Defendant Dabney's answer collaterally attacked the validity of the foreclosure decree and alleged that the deed executed by her was induced by misrepresentation. Plaintiff's reply set up laches as a bar to the attack on the tax foreclosure. Plaintiff also asserted that defendants were barred from attacking the foreclosure proceeding by ORS 312.230 (1), which provides that a proceeding to determine the validity of a tax foreclosure "shall be commenced within two years from the date of the judgment and decree of foreclosure and sale to the county, or within six months from June 1, 1961, whichever is the later."

The trial court held that because the published notice did not comply with the statute, the court in the foreclosure proceeding did not acquire jurisdiction and that, therefore, the foreclosure decree was void. The court also held that ORS 312.230, the statute of

limitations applicable to suits attacking the validity of tax foreclosure sales, did not preclude collateral attack on a decree which was void as a result of a jurisdictional defect.

The court went on to hold, however, that defendants' attack on the foreclosure proceeding was barred by laches. The lower court further held that plaintiff's acts were sufficient to establish title by adverse possession or, alternatively, that title was acquired by deed from Mrs. Dabney, which the court found to have been effectively delivered when mailed and not induced by misrepresentation or fraud. Accordingly, a decree was entered quieting the title of Hood River county to the property in question. Defendants appeal, presenting substantially the same arguments as were asserted below.

The trial court erred in holding that the foreclosure decree was subject to attack by defendants.

ORS 312.220 provides that a decree of foreclosure for delinquent taxes "is conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation."[1] ORS 312.230 bars any suit attacking the validity of a sale upon fore-

---

[1] The full text of the statute is as follows:

"Any judgment and decree for the sale of real property to the county, on foreclosure for delinquent taxes, is conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. The judgment and decree is prima facie evidence that the taxes have not been paid and that the property was subject to taxation at the time it was assessed. The judgment and decree shall estop all persons raising objections thereto, or to the title based thereon, which existed at or before the date of the judgment and decree and could have been presented as an objection or defense to the application for the judgment and decree."

closure for delinquent taxes if not commenced within two years.[2]

There is no contention that the taxes were paid or that the property was not subject to assessment and taxation. Therefore, the decree must be regarded as valid unless on constitutional grounds we must hold that the legislature lacks the power to declare valid a tax foreclosure decree defective for lack of jurisdiction.

In our previous cases we distinguished those tax foreclosure proceedings which are void and those which are merely irregular, holding that the legislature has the power to set up a statute of limitations barring an attack on the latter but not on the former.[3] According to our analysis in those cases only a jurisdictional defect would render a proceeding void. Failure to comply strictly with statutory notice requirements was held to be such a defect.[4]

---

[2] The pertinent part of ORS 312.230 is as follows:

"(1) Every action, suit or proceeding, commenced for the purpose of determining the validity of a sale of real property on foreclosure for delinquent taxes, or to quiet title against such sale, or to remove the cloud thereof, or to recover possession of the property, shall be commenced within two years from the date of the judgment and decree of foreclosure and sale to the county, or within six months from June 1, 1961, whichever be the later.

"* * * * *

"(3) For all purposes this section shall be construed as a statute of prescription as well as a statute of limitation."

[3] See Evergreen Timber Co. v. Clackamas County, 235 Or 552, 385 P2d 1009 (1963) and cases cited therein.

[4] Evergreen Timber Co. v. Clackamas County, 235 Or 552, 385 P2d 1009 (1963); Murphy v. Clackamas County and Jones Lumber Co., 200 Or 423, 264 P2d 1040, 266 P2d 1065 (1953); Keerins Bros. v. Mauney, 189 Or 651, 219 P2d 753, 222 P2d 730 (1950); Champ v. Stewart, 186 Or 656, 208 P2d 454 (1949); Frederick v. Douglas County, 176 Or 54, 155 P2d 925 (1945); Elliott v. Clement, 175 Or 44, 149 P2d 985, 151 P2d 739 (1944).

Upon a thorough re-examination of these cases we have decided that the view we have previously expressed must be clarified and in large measure modified.

■ We have not always made clear what we regard as a jurisdictional defect, particularly with respect to the adequacy of notice. If the notice is so defective that it does not satisfy the requirement of due process it is clear that the court does not have jurisdiction. Our cases go beyond this, however, and hold that in addition to the constitutional requirement certain other requirements specified in the statutes relating to tax foreclosure proceedings must also be met before jurisdiction is acquired.[5] We have said that the statutory requirements are essential to jurisdiction if a departure from the statute "affects some substantial right of the complaining party—where he is denied some substantial right which would have been granted him had the regulation been pursued according to its terms ＊ ＊ ＊ ."[6]

---

[5] See, e.g., Frederick v. Douglas County, 176 Or 54, 63-64, 155 P2d 925, 929 (1945), where the court said:

"In reaching a conclusion as to what statutory provisions are jurisdictional, a distinction may be made between procedures which are required both by statute and also by the due process clause of the constitution on the one hand, and procedures required by statute alone, over and beyond anything rendered necessary by the constitution, on the other. Ensign v. Barse, 107 N.Y. 329, 14 N.E. 400, 15 N.E. 401. Those requirements of statute which are essential to due process are, of course, jurisdictional and we think that statutory requirements over and beyond the bare necessities of due process may also be jurisdictional, but only if it is the legislative intent to make them so."

See also, cases cited in footnote 4 supra; Note, 28 Or L Rev 184 (1949).

[6] This was the test adopted in Frederick v. Douglas County, 176 Or 54, 64, 155 P2d 925 (1945) from Miller v. Henderson, 50 Wash 200, 96 P 1052, 1053 (1908).

It seems evident from our cases that a published summons sufficient to satisfy due process but defective because it failed to follow the provisions of the statute as to the time within which appearance must be made would be deemed a jurisdictional defect.

Tested by this standard the defect in the published summons in the present case would be jurisdictional and would render the decree void. That result is warranted only if it can be said that the statutory provision as to the time within which appearance must be made was intended by the legislature to be a jurisdictional requirement.

The notice statute itself offers no clue to the legislative intent in this regard. In enacting the tax foreclosure statutes the legislature had two opposing interests to consider: On one hand, the interest of the taxpayer in receiving the warning of impending foreclosure; and on the other hand, the interests of the county and the purchasers at the foreclosure sale. The latter interests are served by a tax sale procedure which provides the county with a market for tax delinquent lands which in turn depends upon giving the purchasers at the foreclosure sale reasonable assurance that they will acquire good title.

■■ Our previous decisions striking down tax foreclosure proceedings based on relatively insignificant defects treat the statutes as expressing a legislative intent to favor the interest of the taxpayer rather than the interest of the county and the interest of the purchaser at the tax foreclosure sale. We are now of the opinion that this interpretation of the statutes cannot be sustained and we hold that all defects in tax foreclosure proceedings are to be deemed non-jurisdictional unless they deprive the taxpayer of his constitutional right to due process of law.

We reach this conclusion upon the basis of our interpretation of the legislative purpose expressed in ORS 312.214, 312.216, 312.218, 312.220, and 312.230, all of which show a design to strictly limit the delinquent taxpayer's right to attack defective tax foreclosure proceedings. Thus, ORS 312.214 expressly declares that it is the public policy of this state that the title acquired by the county upon a foreclosure for delinquent taxes "shall have the utmost stability," and it imposes upon persons attacking such titles "a continuing duty to investigate and ascertain whether such real property did become or hereafter shall become included in tax foreclosure proceedings, regardless of any defects, *jurisdictional or otherwise,* that may have appeared or shall hereafter appear in such foreclosure proceedings." (Emphasis added.)[7] And ORS 312.216 establishes conclusive presumptions that the person

---

[7] The full text of ORS 312.214 is as follows:

"(1) Notwithstanding any other provisions of law, and for all purposes of ORS 312.214 to 312.230, it is hereby declared to have been and to be the public policy of this state that when a county has acquired or hereafter acquires real property by foreclosure for delinquent taxes, its title to such property shall have the utmost stability; and that once real property has become or hereafter shall become subject to foreclosure for taxes, there has been imposed and there hereafter shall be imposed upon all persons owning or claiming to own, or having or claiming to have, any interest in such real property, by reason of their delinquency, a continuing duty to investigate and ascertain whether such real property did become or hereafter shall become included in tax foreclosure proceedings, regardless of any defects, jurisdictional or otherwise, that may have appeared or shall hereafter appear in such foreclosure proceedings.

"(2) If any subsection, sentence, clause or word of ORS 312.214 to 312.230 [incorrectly printed as 312.220] shall be held to be unconstitutional, the invalidity of such subsection, sentence, clause or word shall not affect the validity of any other portion of ORS 312.214 to 312.230, it being the intent of this Legislative Assembly to enact the remainder of ORS 312.214 to 312.230 notwithstanding such part so declared unconstitutional should or may be so declared."

whose land was foreclosed for delinquent taxes had notice of certain matters relevant to the foreclosure all of which are designed to limit the grounds upon which a defective foreclosure proceeding can be attacked.[8] ORS 312.218 purports to treat the county as having constructive possession of foreclosed lands and declares that the county's constructive possession is equivalent to actual possession, thus making it possible for the county to acquire title to defectively foreclosed land by adverse possession.[9]

Most emphatic of all these sections is ORS 312.220, which proclaims that:

> "Any judgment and decree for the sale of real property to the county, on foreclosure for delinquent taxes, is conclusive evidence of its regularity and validity in all collateral proceedings, except where the taxes have been paid or the property was not liable to assessment and taxation. The judgment and decree is prima facie evidence that the taxes have not been paid and that the property was subject to taxation at the time it was assessed. The judgment and decree shall estop all persons raising objections thereto, or to the title based thereon, which existed at or before the date of the judgment and decree and could have been presented as

---

[8] ORS 312.216 provides that the delinquent owner conclusively shall be deemed to have taken notice that his property is annually assessed; that the tax becomes due and delinquent at a fixed time; that the tax becomes a lien upon the property; that if the tax is not paid, the lien will be foreclosed, and that because of his delinquency in payment he has a continuing duty to ascertain whether the property has been foreclosed on "regardless of any defects, jurisdictional or otherwise, that may have appeared or hereafter shall appear in such foreclosure proceedings."

[9] ORS 312.218 also provides: "That the recording of a deed to a county pursuant to ORS 312.200 [the deed executed by the tax collector to the county] gave and hereafter shall be deemed to give notice to the world of such county's constructive possession * * *."

an objection or defense to the application for the judgment and decree."

Finally, as previously explained, ORS 312.230 establishes a statute of limitation and prescription for the institution of suits attacking tax titles.

The foregoing statutory provisions make it clear that the legislature has striven to employ every conceivable device to make invulnerable the county's title to land acquired upon foreclosure for delinquent taxes.[⑩] Since these statutes by their own terms proclaim that tax titles are to be free from attack not only for mere irregularities but also for jurisdictional defects, we are warranted in concluding that all procedural defects in tax foreclosure proceedings less than a constitutional deficiency for lack of due process were intended to be regarded as nonjurisdictional defects.

■ In the present case, although the published sum-

---

[⑩] The legislative purpose to strengthen tax titles is further disclosed in the records of the House and Senate Taxation Committees relating to Senate Bill 523 (the source of the tax foreclosure statutes to which we have referred). Of special interest is a letter from Senator Donald Husband to Senator Ben Musa containing the following paragraphs:

"In discussing this matter with Mr. [an employee of a title insurance company] it is my judgment that the previous decisions of our Supreme Court have stated that the two year statute would cure mere irregularities, but would not cure jurisdictional defects. According to Mr. * * * the present law is this—that color of title acquired by a tax foreclosure becomes final after the expiration of the two year statute of limitation as to all irregularities, but not as to jurisdictional defects, and the two year statute would not help cure jurisdictional defects.

"The purpose of Senate Bill 523 is to express public policy of the state to further the stability of tax titles, and make the short statute of limitations apply to jurisdictional defects, as well as to mere irregularities, as are now known in the law. Our courts have said that 312.220 is limited to irregularities and not to jurisdictional defects."

mons required the owner to appear within 42 days rather than within 60 as required by the statute, the time for appearance recited in the summons was sufficient to satisfy due process requirements. Therefore, applying our previous reasoning the defect was not jurisdictional. ORS 312.230 admittedly bars any claim resting upon a nonjurisdictional defect. We hold, therefore, that defendants' claim is barred by the statute.

Plaintiff's title being free from attack by operation of ORS 312.230, it was unnecessary for plaintiff to prove that it acquired title by the deed of defendant Dabney or by adverse possession.

■ Although we could rest our decision solely upon the ground that the defect in the summons was nonjurisdictional and that, therefore the foreclosure decree is free from collateral attack, in the interest of carrying out the clearly indicated legislative purpose to give the "utmost stability" to tax titles we prefer to rest our decision upon the broader ground that even if the defect in the proceedings is jurisdictional for failure to meet either legislative or constitutional requirement deemed essential to jurisdiction, it was within the purpose and power of the legislature in enacting ORS 312.220 and ORS 312.230 to bar the delinquent owner from attacking the foreclosure decree.

■ A contrary view was expressed in *Evergreen Timber Co. v. Clackamas County,* 235 Or 552, 556-57, 385 P2d 1009 (1963). There we said:

> "Within certain limits the legislature has the power to fix the time within which actions can be brought, but it cannot, without more, command the owner of property to bring an action to defend his title or lose it. Thus a statute requiring a taxpayer whose land has been foreclosed for nonpay-

ment of taxes to bring an action to determine the validity of the tax sale within a certain period after the sale does not operate to divest the taxpayer's title if the foreclosure decree is void. [Footnote omitted]. On the other hand, if the foreclosure decree is simply irregular, a statute limiting the time within which the tax foreclosure proceeding can be attacked is effective to quiet a title derived through the tax sale. [Footnote omitted]."

Upon a reconsideration of the question we are now of the opinion that when land has been sold for taxes the legislature has the constitutional power to cut off the interest of the delinquent owner, even though the decree of foreclosure is void for lack of jurisdiction if the owner is given a reasonable time within which to attack the void decree.[⑩]

■ It must be borne in mind that we are not here dealing with a statute of limitations which cuts off the rights of the owner without warning. The statutes give warning to the owner that if he does not pay his taxes

---

[⑩] As the court pointed out in Spitcaufsky v. Hatten, 353 Mo 94, 111, 182 SW2d 86, 96, 160 ALR 990 (1944):

"Due process is a very different thing in the assessment and collection of public taxes from the same right as applied to litigation between parties over private rights, the institution of the latter depending wholly on the will of the complainant. The reasons are apparent. The first is the government's exigent need for the pecuniary support necessary to its existence. The second is the futility of impeding the annual collection of taxes by requiring a predetermination of the titles to many parcels of land  *  *  *  and the identity and competency of their owners. The third is that taxes are collected periodically under fixed laws which, in a restricted sense, impart their own notice. The settled doctrine of the authorities is that the taxing power is wholly legislative, and that land may be summarily foreclosed and sold for delinquent taxes even by administrative procedure alone. This does not deny due process if there has been a compliance with the essential provisions of the statute, and the landowners are afforded an opportunity to be heard, though only by an administrative tribunal after the sale."

he may lose his land. As the dissent in *Welborn v. Whitney,* 190 Okla 630, 642-43, 126 P2d 263, 275 (1942) explains, every citizen "is presumed to have known that his land was taxable, that in due course it would be assessed, a tax levy extended against it, and it would be placed on the tax rolls, that it was his duty to timely pay his taxes, that if he failed to do so, his land would be offered for sale and resale at a time and place specified in the statutes, and that if the county had to purchase it for want of bidders, it would be offered for sale at a county commissioner's sale and some one would buy it."

ORS 312.216 creates a conclusive presumption that the taxpayer has notice of each of these aspects of the machinery of collecting property taxes. The statute also specifically impresses upon the owner "a continuing duty to investigate and ascertain whether or not such real property has been or hereafter shall become included in tax foreclosure proceedings, regardless of any defects, jurisdictional or otherwise, that may have appeared or hereafter shall appear in such foreclosure proceedings." It is further provided in ORS 312.218 that the recording of the deed from the tax collector to the county "shall be deemed to give notice to the world" of the county's claim to the property.

■  The imposition of the duty upon the defendant owner to learn what was being done to enforce the payment of taxes against his property and the limitation upon his right to attack the foreclosure decree after expiration of two years from its rendition as provided in ORS 312.230 is a legitimate exercise of

legislative power in carrying out a property tax program.[20]

Other states have recognized the legislative power to place limits of this kind upon the right of the delinquent owner to attack tax foreclosure proceedings, including those which were so defective that the court had no jurisdiction to enter a valid decree of foreclosure. The leading case is *Meigs v. Roberts,* 162 NY 371, 56 NE 838 (1900). In that case the tax foreclosure proceedings contained a jurisdictional defect. The court held that the New York statute of limitations making a tax deed, after the lapse of two years from its recording, conclusive evidence of the regularity of the tax foreclosure proceedings was effective to bar the claim of a delinquent owner even though the foreclosure proceedings contained a jurisdictional defect. The court held that the legislature has the power to enact a statute of limitations which will "bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to

---

[20] The necessity for adequate assurance of title to insure the salability of property at tax sale is indicated by the observation in Note, 62 Harv L Rev 93, 100 (1948):

"* * * [T]he notorious insecurity of tax titles keeps the purchase price at the level of the statutory minimum—taxes, interest, penalties, and costs of the sale. The courts reason that the price paid reflects the risk and place the brunt accordingly. The circular effect is readily apparent; tax titles are upset because the price paid is confiscatory, and the price paid is confiscatory because tax titles are notoriously liable to be upset. Even if the rationale justifies the result between the immediate parties, it overlooks the circle's ultimate viciousness, which is felt by the taxpaying public when delinquent lands begin to accumulate in the hands of the taxing body and their absence from the tax rolls is reflected in a higher assessment rate."

enforce his right." (56 NE at 840).[18] The same effect has been given similar statutes of limitations in other states.[19]

ORS 312.230 gave defendants six months from its effective date to assert their claim to the property in question. The six month period is a reasonable time. ORS 312.230 is not repugnant to any provision of the Oregon or the United States Constitution.[19]

In enacting the 1961 legislation (Oregon Laws 1961, ch 718) relating to the foreclosure of property tax liens, the legislature manifested its dissatisfaction with the previous law on the subject, including, we may assume, the holdings of this court, and fashioned the law to eliminate as far as possible the features in past legislation found by this court to have been objectionable or wanting in testing it against constitutional requirements. This being new legislation, the cases prior to its enactment can, for the most part, be distinguished from the case at bar. To the extent that they are not distinguishable they must be regarded as overruled. *Evergreen Timber Co. v. Clackamas County,* supra,

---

[18] See also, George F. Weaver Sons Co. v. Burgess, 7 NY2d 172, 164 NE2d 677 (1959); Weaver v. City of Utica, 2 App Div2d 456, 156 NYS2d 569 (1956); City of New Rochelle v. Echo Bay Waterfront Corp., 268 App Div 182, 49 NYS2d 673 (1944); Swan Street Corp. v. City of Buffalo, 206 Misc 372, 133 NYS2d 229 (1954); Dunkum v. Maceck Building Corp., 256 NY 275, 176 NE 392 (1931); Halsted v. Silberstein, 196 NY 1, 89 NE 443 (1909).

[19] See, e.g., the California cases: Union Paving Co. v. East Del Paso Heights, 31 Cal Rptr 915 (Ct App 1963); Howard v. California, 30 Cal Rptr 708 (Ct App 1963); Sears v. County of Calaveras, 45 Cal2d 518, 289 P2d 425 (1955); Elbert, Ltd. v. Gross, 41 Cal2d 622, 260 P2d 35 (1953); Tannhauser v. Adams, 31 Cal2d 169, 187 P2d 716, 5 ALR2d 1015 (1947); Davault v. Essig, 80 Cal App2d 970, 183 P2d 39 (1947), cert. den., 333 US 843, 68 S Ct 660, 92 L ed 1126.

[19] Turner v. State of New York, 168 US 90, 18 S Ct 38, 42 L ed 392 (1897); Saranac Land and Timber Co. v. Comptroller of New York, 177 US 318, 20 S Ct 642, 44 L ed 786 (1900).

was decided after the enactment of the 1961 legislation. To the extent that it expresses a view contrary to the present case it is overruled.

The decree of the trial court is affirmed.