Argued and submitted May 3, reversed and remanded with instructions October 30, 1985, reconsideration denied January 17, petition for review denied February 11, 1986 (300 Or 545)

In the Matter of the Adoption of
Nancy Mae Wilson aka Nancy Mae
Moulton nka Nancy Mae Guttierrez.

HOGUE et al,
*Respondents,*

*v.*

OLYMPIC BANK,
*Appellant.*

(A1999; CA A33411)

708 P2d 605

Mildred J. Carmack, Portland, argued the cause for appellant. With her on the brief were Kevin F. Kerstiens, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Dennis Jordan, Everett, Washington, argued the cause for respondents. With him on the brief were Jordan, Brinster, Templeton & Ryan, P.S., Everett, Washington, and Emil R. Berg and Hallmark, Griffith & Keating, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This is a proceeding to vacate a 1939 decree of adoption. The lower court vacated the decree. We reverse and remand for reinstatement of the decree.

Nancy Mae Wilson (nka Nancy Mae Guttierrez) was born the illegitimate child of Lois Moulton (later known as Lois Lee) and Paul Wagner in 1935. The record of her birth falsely states that she was born to Mr. and Mrs. R. S. Wilson, Jr. The name Wilson was a pseudonym chosen by Lois's father, Arthur Moulton, and his then mistress, Helen von Cleff, to conceal Lois's identity. Because Lois was financially unable to support her, Nancy was initially placed in a baby home and was later cared for at Arthur Moulton's home. Arthur and his wife were later divorced, and he married von Cleff.

In 1939, Arthur and Helen Moulton adopted Nancy. Their petition for adoption alleged generally that Nancy was the daughter of Mr. and Mrs. Robert S. Wilson, Jr., that the father had abandoned her, that his whereabouts were unknown and that it was in the best interests of Nancy that she be adopted by the Moultons. Arthur's accompanying affidavit supported the allegations in the petition. The petition was also accompanied by a written consent to the adoption signed "Mrs. Robert S. Wilson, Jr." The state Public Welfare Commission filed a report with the adoption court which stated that, in an interview, Arthur had said that Nancy had in fact been born to his daughter Lois, that the father of the child was unknown and that the birth records indicating otherwise were incorrect. It also stated that Arthur had reported that he had received the mother's written consent to the adoption. The court nevertheless entered the decree of adoption on December 22, 1939.

Lois in fact had never consented to the adoption, nor did she receive notice of the adoption proceedings. The signature on the purported consent was not hers. When Arthur died in 1947, Helen Moulton told Lois about the adoption. Lois asked the judge who signed the decree about the adoption, and he told her that she could have it set aside but that it probably would be pointless, because Nancy hated her. Lois did not challenge the adoption until she filed this action in 1984.

The trial court vacated the adoption decree on the ground that it was void.[1] Appellant is the personal representative of the estate of Paul Wagner. Respondent is the personal representative of the estate of Lois Moulton, who died after filing the action.

The legislature enacted ORS 109.381 in 1959. The statute provides:

"(1) A decree of a court of this state granting an adoption, and the proceedings in such adoption matter, shall in all respects be entitled to the same presumptions and be as conclusive as if rendered by a court of general jurisdiction and not by a court of special or inferior jurisdiction, and jurisdiction over the persons and the cause shall be presumed to exist.

"(2) Except for such right of appeal as may be provided by law, decrees of adoption shall be binding and conclusive upon all parties to the proceeding. No party nor anyone claiming by, through or under a party to an adoption proceeding, may for any reason, either by collateral or direct proceedings, question the validity of a decree of adoption entered by a court of competent jurisdiction of this or any other state.

"(3) After the expiration of one year from the entry of a decree of adoption in this state the validity of the adoption shall be binding on all persons, and it shall be conclusively presumed that the child's natural parents and all other persons who might claim to have any right to, or over the child, have abandoned him and consented to the entry of such decree of adoption, and that the child became the lawful child of the adoptive parents or parent at the time when the decree of adoption was rendered, all irrespective of jurisdictional or other defects in the adoption proceeding; after the expiration

---

[1] It reached the following conclusions of law:

"1. The adoption report filed by the Welfare Department of the State of Oregon is part of the official record of the adoption proceeding.

"2. Lacking a valid consent to the adoption of Nancy Mae Wilson, the Court was without jurisdiction to proceed to the granting of a valid Decree of Adoption.

"3. The absence of notice of the adoption to the biological parent constitutes a violation of due process of law.

"4. The Statute of Limitations cannot be applied to validate a Decree of Adoption which is void for want of consent.

"5. The Statute of Limitations cannot be applied to validate a Decree of Adoption which violates due process of law for lack of notice.

"6. The doctrines of estoppel or laches are not applicable to this case."

of such one-year period no one may question the validity of the adoption for any reason, either through collateral or direct proceedings, and all persons shall be bound thereby; provided, however, the provisions of this subsection shall not affect such right of appeal from a decree of adoption as may be provided by law.

"(4)  The provisions of this section shall apply to all adoption proceedings instituted in this state after August 5, 1959. This section shall also apply, after the expiration of one year from August 5, 1959, to all adoption proceedings instituted in this state before August 5, 1959."

■     The adoption decree was void when it was entered, because the adoption court had no jurisdiction to enter it without consent from or notice to the natural mother. *Hughes v. Aetna Casualty Co.,* 234 Or 426, 383 P2d 55 (1963); *Furgeson v. Jones,* 17 Or 204, 20 P 842 (1888); *see also Armstrong v. Manzo,* 380 US 545, 85 S Ct 1187, 14 L Ed 2d 62 (1965); *but see Hughes v. Aetna Casualty Co., supra,* 234 Or at 449-50 (concerning adoption decrees entered after the effective date of ORS 109.381). Under the statute, however, the decree, having been entered before August 5, 1959, became conclusively presumed to be valid and immune from attack after August 5, 1960. Consequently, this action is barred unless there is some reason why we cannot apply the statute. The trial court held that the statute cannot be applied to validate a decree void for lack of consent from or notice to the natural mother. Respondent urges us to affirm that decision, relying mainly on *Hughes v. Aetna Casualty Co., supra.* Appellant argues that *Watkins v. Chirrick,* 19 Or App 241, 526 P2d 1399 (1974), controls and that *Hughes* is distinguishable.

In *Watkins,* the petitioner appealed from an order dismissing her petition to vacate the adoption of her child on the ground that ORS 109.381 barred her challenge. She alleged that she gave birth to an illegitimate child on July 11, 1971, when she was sixteen. On August 21, 1972, she signed a consent to the adoption, and approximately three months later the trial court entered the decree of adoption. She alleged that, when she signed the consent, she was acting under fraud, duress and undue influence. She filed her petition to vacate the decree on January 28, 1974. We found that she had not alleged any facts that justified tolling the Statute of Limitations. She did not allege that she had no notice of the

adoption, that she did not know her child was a member of respondents' family or that her lack of representation by an attorney at the adoption proceeding somehow justified tolling the statute. We held that she had failed to allege facts showing that she did not receive due process in connection with the decree. She asserted, however, as respondent asserts in this case, that the adoption decree was void for lack of valid consent and that ORS 109.381 violated her due process rights. We rejected that argument, finding that petitioner had every opportunity to raise the issue of consent within the one-year limitation period, and affirmed the dismissal of her petition.

In this case, Lois did not receive notice of the adoption proceeding when the decree was entered. However, in 1947 she learned about it from her stepmother and the judge who signed the decree. She did nothing to challenge it. After the enactment of ORS 109.381, by its terms, she had until August 5, 1960 to do so. She asserts no good reason why she could not have challenged the adoption before then. She suggests that she may not have known for certain that Nancy had been adopted until she first saw the adoption decree in 1984. She admits, however, being told about it in 1947, and she could have inquired further into the matter then if she had some doubt. As did the petitoner in *Watkins,* she had ample opportunity to raise the issue of her lack of notice and consent within the time prescribed by ORS 109.381.

Respondent argues, notwithstanding *Watkins v. Chirrick, supra,* that under *Hughes v. Aetna Casualty Co., supra,* we cannot apply ORS 109.381 in this case. In *Hughes,* the petitioner sought to set aside his own adoption so that he, as the sole intestate heir, would be entitled to his natural mother's estate. He had been placed in a child care home after his birth and was adopted in 1927. The Supreme Court held that his adoption was void, because the adoption file did not contain the statutorily required proof that the child care home, which had consented to his adoption, was authorized to do so. It also held that, even if the adoption had in fact proceeded on the basis of the natural parents' abandonment of the child, the adoption was nevertheless void, because his natural mother had not been provided with notice of the adoption. The court also held that ORS 109.381 did not bar petitioner's suit, which he brought in 1971, 34 years after the decree was entered:

"This statute [ORS 109.381] has two aspects—in one it is a curative act, in the other a statute of limitations. As to the former, the general rule is that it is not competent for the legislature to validate a judgment void for want of jurisdiction and a statute purporting to have that effect would be unconstitutional, amounting to a denial of due process of law. If, however, the defect in the proceedings is the omission of a requirement that could have validly been dispensed with in the first instance, the judgment may be validated by a retroactive law, subject to a restriction that it could not impair the obligation of a contract or a vested right. *Frederick v. Douglas Co. et al,* 176 Or 54, 66-67, 155 P2d 925 [(1945)]; *Smith v. Cameron et al,* 123 Or 501, 506-507, 262 P 946 [(1928)]; *Nottage v. City of Portland,* 35 Or 539, 548, 58 P 883, 76 Am St Rep 513 [(1899)]; 2 Cooley's Constitutional Limitations (8th ed) 775-776; 16A CJS 131, Constitutional Law § 427; 11 Am Jur 1211-1212, Constitutional Law § 381. The requirement of Oregon Laws 1920, § 9830, that a copy of the order of permanent commitment of a child to an institution must be filed in the adoption proceedings is probably one that could have been validly omitted, but whether so or not, the statute cannot be applied to this case without violating the constitutional rights of the petitioner because in 1957, upon his mother's death, two years prior to the enactment of ORS 109.381, the petitioner's right to inherit his natural mother's estate had vested in him. *State of Oregon v. Black,* 193 Or 295, 311, 236 P2d 326 [(1951)]; *In re Witherill's Estate,* 178 Or 253, 260, 166 P2d 129 [(1946)].

"Aetna argues, however, that subsection (1) of ORS 109.381 does no more than provide a presumption of validity of adoption decrees, and since a presumption in this state is a species of evidence, *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 597, 147 P2d 227 [(1944)], and there is no vested right in a rule of evidence, *State v. Randolph,* 85 Or 172, 186, 166 P 555 [(1917)], no constitutional right of the petitioner would be impaired by applying the statute to this case. More pointedly, it is said, in substance, that the legislature, by enacting subsection (1), has repealed the rule of *Furgeson v. Jones* [, 17 Or 204, 20 P 842, 11 AS 808, 3 LRA 620 (1888)]. That it has done so validly as to future adoption proceedings there can be no doubt, but as much cannot be said of prior proceedings, for it is not competent for the legislature, by the device of construing a statute, to alter its meaning so as to affect vested rights, *Finlayson v. Peterson,* 5 ND 587, 67 NW 953, 33 LRA 532, 57 Am St Rep 584 [(1896)]; *Baker v. Clowser,* 158 Iowa 156, 138 NW 837, 43 LRA NS 1056 [(1912)]; *Greenough v.*

*Greenough,* 11 Pa 489, 51 Am Dec 567 [(1849)]; 11 Am Jur 1204, Constitutional Law § 375. *Furgeson v. Jones* and the cases that followed it announced the construction of the adoption statute of Oregon. To apply ORS 109.381(1) to this case would be, as Chief Justice Gibson pointed out in the *Greenough* case, not only a violation of due process, but as well to give effect to an exercise of judicial power by the legislature.

"By subsections (3) and (4) of ORS 109.381, it is provided, in substance, that actions to question decrees of adoption shall be barred if commenced after the expiration of one year from their entry, but if the adoption proceedings were instituted prior to August 5, 1959, then such an action must be brought within one year from August 5, 1959. That was the effective date of the act and, evidently, the provision as to prior proceedings was adopted in order to avoid the constitutional objection against cutting off remedies simultaneously with the passing of the limitations statute. See *Vance v. Vance,* 108 US 514, 517, 2 S Ct 584, 27 L Ed 808 [(1883)]. But a judgment void on its face for want of jurisdiction is a nullity and should be vacated when called to the attention of the court. *Salitan et al v. Dashney et al,* 219 Or 553, 559, 347 P2d 974, 81 ALR2d 532 [(1959)], and cases there cited. See, also, *Lothstein v. Fitzpatrick,* 171 Or 648, 658, 138 P2d 919 [(1943)]; *McLean v. Porter,* 148 Or 262, 271, 35 P2d 664 [(1934)]. As stated in 49 CJS 880, Judgments § 449:

" 'Such a judgment may be attacked at any time by anyone, including the party in whose favor it is given, and may be impeached in any action, direct or collateral. It is not necessary to take any steps to vacate or avoid a void judgment; it may simply be ignored.'

"The courts therefore hold that a statute of limitations is not applicable to a judgment void upon its face. *Elliott v. Clement,* 175 Or 44, 58, 149 P2d 985, 151 P2d 739 [(1944); *In re Randall's Estate,* 8 Wash 2d 622, 113 P2d 54 [(1941)]; *Foster v. Foster,* 207 Ga 519, 63 SE2d 318 [(1951)]; *Fooks' Executors v. Ghingher,* 172 Md 612, 192 A 782, cert den 302 US 726, 58 S Ct 47, 82 L Ed 561 [(1937)]; 49 CJS 756, Judgments § 379." 234 Or at 448-51.

The court then discussed and cited with approval *Dean v. Brown,* 216 Ark 761, 227 SW2d 623 (1950), which held that the Arkansas Statute of Limitations concerning adoptions could not operate retrospectively in favor of the adopted child to divest title to the adopting parent's real estate, which had

vested in her heirs at law on her death before the enactment of the statute. The court in *Dean* did, however, hold that the statute barred the heirs' challenge to the adoption insofar as the decedent's personal property was concerned, because, under Arkansas law, their right to inherit that property did not vest before the statute was enacted. The *Hughes* court relied on *Dean* in concluding that ORS 109.381 did not bar the petitioner's suit:

> "*Dean v. Brown* was a case in which an adopted child was seeking to uphold rather than invalidate the adoption proceeding, but the principle upon which it was decided, that a statute of limitations cannot be made to apply validly to a void judgment, at least where to do so would be to interfere with vested rights, is fully applicable to this case, since the petitioner's right to his natural mother's estate, both real and personal, had fully vested before the enactment of ORS 109.381." 234 Or at 452.

Strictly speaking, appellant is correct in stating that *Hughes* is distinguishable, because respondent does not claim that it has any vested property rights that will be impaired if we apply ORS 109.381 to bar its challenge. Nevertheless, the broad statements in *Hughes,* that the legislature cannot validate a judgment void for want of jurisdiction and that statutes of limitations do not apply to void judgments, appears to support respondent's position. However, those statements are suspect in light of the Supreme Court's later decision in *Hood River County v. Dabney,* 246 Or 14, 423 P2d 954 (1967), a case not cited by either party.

*Hood River County* was an action to quiet title. The county had acquired title to the land from defendant's predecessor in interest through a tax foreclosure sale in 1928. The summons published had been defective, because it provided the landowner only six weeks in which to appear, rather than 60 days as required by statute. In 1963, defendant learned of that defect and disputed the plaintiff's title.

The issue was whether defendant's challenge to the plaintiff's title was barred by ORS 312.220, which provided, as relevant, that a decree of foreclosure for delinquent taxes "is conclusive evidence of its regularity and validity in all collateral proceedings" and ORS 312.230, which barred any action challenging a tax foreclosure decree, unless it was commenced

within two years of the decree or six months from June 1, 1961, whichever was later. Applying those statutes, the court stated that "the decree must be regarded as valid unless on constitutional grounds we must hold that the legislature lacks the power to declare valid a tax foreclosure decree defective for lack of jurisdiction." 246 Or at 20. The court reviewed earlier cases in which it had held that the legislature could enact statutes barring challenges to tax foreclosure decrees that were merely irregular due to nonjurisdictional defects, but could not do so with respect to those void for want of jurisdiction. The court reexamined those cases and, on the basis of the legislative purpose to limit challenges to tax foreclosures strictly, held that all defects in tax foreclosure proceedings were nonjurisdictional unless they deprived the taxpayer of due process of law. The court also held that the six weeks' notice the owner received, although not sufficient to satisfy the tax foreclosure statutes, was sufficient to satisfy the requirements of due process of law. The defect was therefore nonjurisdictional and, under the reasoning of its earlier cases, the court held that the Statute of Limitations could be applied to bar the defendant's challenge.

The court, however, chose to broaden the basis of its decision:

"Although we could rest our decision solely upon the ground that the defect in the summons was nonjurisdictional and that, therefore the foreclosure decree is free from collateral attack, in the interest of carrying out the clearly indicated legislative purpose to give the 'utmost stability' to tax titles *we prefer to rest our decision upon the broader ground that even if the defect in the proceedings is jurisdictional for failure to meet either legislative or constitutional requirement deemed essential to jurisdiction, it was within the purpose and power of the legislature in enacting ORS 312.220 and ORS 312.230 to bar the delinquent owner from attacking the foreclosure decree.*

"A contrary view was expressed in *Evergreen [Tim.] Co. v. Clackamas [Co.]*, 235 Or 552, 556-57, 385 P2d 1009 (1963). There we said:

" 'Within certain limits the legislature has the power to fix the time within which actions can be brought, but it cannot, without more, command the owner of property to bring an action to defend his title or lose it. Thus a statute requiring a taxpayer whose land has been foreclosed for

nonpayment of taxes to bring an action to determine the validity of the tax sale within a certain period after the sale does not operate to divest the taxpayer's title if the foreclosure decree is void. [Footnote omitted]. On the other hand, if the foreclosure decree is simply irregular, a statute limiting the time within which the tax foreclosure proceeding can be attacked is effective to quiet a title derived through the tax sale. [Footnote omitted].'

*"Upon a reconsideration of the question we are now of the opinion that when land has been sold for taxes the legislature has the constitutional power to cut off the interest of the delinquent owner, even though the decree of foreclosure is void for lack of jurisdiction if the owner is given a reasonable time within which to attack the void decree."* 246 Or at 26-27. (Emphasis supplied; footnote omitted; brackets in original.)

The court noted that it was not dealing with a Statute of Limitations that cut off landowners' interests without warning, because by statute they were presumed to know that their property was subject to a foreclosure sale if they did not pay the taxes. The court concluded that that presumption and the Statute of Limitations were a valid exercise of the legislature's power to enforce its tax program. Finally, the court concluded that the six-month limitation period applicable to the defendant's challenge was a reasonable time and was not repugnant to either the state or federal constitution. It held that the Statute of Limitations was a valid bar to the defendant's challenge to the plaintiff's title.

After *Hood River County,* it is unlikely that the Supreme Court would decide *Hughes* the same way if it were again confronted with the case, and no doubt the language in *Hughes* on which respondent relies no longer represents the Supreme Court's thinking on the legislature's power to bar challenges to void judgments or decrees. In *Hood River County,* 246 Or at 30-31, the Supreme Court expressly overruled its decision in *Evergreen Tim. Co. v. Clackamas Co.,* 235 Or 552, 385 P2d 1009 (1963), in which it had relied partially upon *Hughes* for the proposition that the legislature cannot, by a Statute of Limitations, bar a taxpayer's challenge to a tax foreclosure decree if that decree is void. Furthermore, in *Johnson v. State,* 245 Or 618, 625-26, 418 P2d 509, 423 P2d 964 (1967), the court followed *Hood River County* and overruled *Elliott v. Clement,* 175 Or 44, 149 P2d 985, 151 P2d 739 (1944),

the only Oregon case relied on in *Hughes* for the proposition that a Statute of Limitation does not apply to a judgment void on its face.

■■    Hood River County, of course, was not an adoption case, but the general issue there was the same as the issue here, the legislature's power to bar challenges to judgments and decrees void for want of jurisdiction. If the legislature can do so with respect to tax foreclosure decrees, we perceive no reason why it cannot do so with respect to adoption decrees. ORS 109.381 reflects a legislative purpose to lend finality to adoption decrees, even when those decrees arise out of proceedings which suffer from a jurisdictional defect, and it fulfills that purpose by limiting the time in which challenges to those decrees may be brought. That is constitutionally permissible if the legislature provides a reasonable limitation period. *Hood River County v. Dabney, supra.* Lois had one year from the enactment of ORS 109.381 to challenge the decree. That was a reasonable time period. Her attack on the adoption decree is barred by ORS 109.381. The statute does not violate due process rights guaranteed by the federal constitution.[2]

Reversed and remanded with instructions to reinstate adoption decree.

---

[2] Because of the basis of our decision, we need not address respondent's cross-assignment of error.